**UNITED STATES**

v.

**Captain Rinney J. FUJIWARA,
United States Air Force.**

**ACM 36124.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 27 Aug. 2004.

Decided 11 April 2007.

Appellate Counsel for Appellant: Frank J. Spinner (argued), Colonel Nikki A. Hall, Major John N. Page III, and Major David P. Bennett.

Appellate Counsel for the United States: Major Kimani R. Eason (argued), Colonel Gerald R. Bruce, Colonel Gary F. Spencer, and Lieutenant Colonel Robert V. Combs.

Before BROWN, FRANCIS, and SOYBEL, Appellate Military Judges.

## OPINION OF THE COURT

FRANCIS, Judge:

Consistent with his pleas, a general court-martial convicted the appellant of three specifications of conduct unbecoming an officer and one specification each of committing indecent acts, adultery, communicating indecent language, and fraternization, in violation of Articles 133 and 134, UCMJ, 10 U.S.C. §§ 933, 934. Contrary to his pleas, the appellant was also convicted of two specifications of rape, two additional specifications of conduct unbecoming an officer, one additional specification of adultery, and one specification of communicating a threat, in violation of Articles 120, 133, and 134, UCMJ, 10 U.S.C. §§ 920, 933, 934. A military judge sentenced the appellant to a dismissal and confinement for 20 years. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dismissal and confinement for 10 years.

The appellant raises three allegations of error: 1) the government violated his right to a speedy trial; 2) the evidence is legally and factually insufficient to support his conviction of the offenses to which he pled not guilty; and 3) the court-martial order does not accurately reflect the results of trial.[1] We heard oral argument in this case on 30 January 2007.

### Background

In June 2003, the appellant was in the process of being reassigned from his position as Flight Commander, Explosive Ordnance Disposal (EOD), 347th Civil Engineer Squadron, Moody Air Force Base (AFB), Georgia, to a new position at Andersen AFB, Guam.

---

1. The government concedes the errors in the court-martial order and urges the Court to direct preparation of a new order to correct the deficiencies.

On 1 June 2003, shortly before the appellant's permanent change of station (PCS) move to Guam, he went camping with several enlisted members of his unit. On 3 June 2003, one of those enlisted members, Airman First Class (A1C) EBS, reported the appellant raped her during the camping outing. The resulting investigation disclosed evidence the appellant also fraternized with enlisted members of his unit by playing a drinking card game which involved the women exposing their breasts, and the men and women exposing their genitals. Further, the appellant, on three different occasions, wrongfully exposed his genitals to enlisted members of his unit. On one such occasion, he pulled his penis from his shorts and asked the enlisted members present to look. On another occasion, while on the bombing range, he exposed his genitals by standing on top of an all terrain vehicle and dropping his pants and underwear. On the third occasion, he exposed his genitals and asked those watching: "Would you f[——] me? I would f[——] me?" Finally, during the two months prior to the alleged rape of A1C EBS, the appellant communicated indecent language to her during two telephone calls.

While the investigation of the above offenses was underway, the ex-wife of another enlisted member in the appellant's unit, Mrs. AMP [2], reported the appellant raped her while on a separate camping trip in 2002, and threatened to end her husband's career if she ever told anyone. The investigation expanded to address this additional rape allegation and the appellant was ultimately charged with offenses against both women.

The appellant pled guilty to fraternizing with enlisted members of his unit, exposing his genitals, communicating indecent language to A1C EBS, committing indecent acts with A1C EBS, and to committing adultery with A1C EBS. He pled not guilty to raping A1C EBS or engaging in other inappropriate behavior with her and not guilty to raping, threatening, or engaging in other inappropriate acts with Mrs. AMP.

### Speedy Trial

 Whether an appellant received a speedy trial is a question we review de novo. *United States v. Cooper*, 58 M.J. 54, 58 (C.A.A.F.2003); *United States v. Doty*, 51 M.J. 464, 465 (C.A.A.F.1999). We give substantial deference to findings of fact made by the military judge and will not overturn such findings unless they are clearly erroneous. *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F.2005); *Cooper*, 58 M.J. at 58.

As he did at trial, the appellant asserts the government violated his right to a speedy trial under Rule for Courts–Martial (R.C.M.) 707 and the Fifth and Sixth Amendments.[3] His claim addresses only those offenses to which he pled not guilty. He does not raise a speedy trial assertion on the offenses to which he submitted unconditional pleas of guilty. The military judge found no speedy trial violation, nor do we.

In denying the appellant's speedy trial motion, the military judge made extensive findings of fact. Those findings are supported by the evidence, with one exception. The judge found the General Court–Martial Convening Authority (GCMCA) authorized a delay in the Article 32[4] hearing from 25 January 2004 to 5 February 2004. The GCMCA-authorized delay started a day earlier, on 24 January 2004. With that minor correction, we adopt the military judge's findings of fact as our own.

### R.C.M. 707

 R.C.M. 707(a) provides, in part, that a military accused must be brought to trial within 120 days after the earlier of: (1) Preferral of charges; or (2) The imposition of restraint under R.C.M. 304(a)(2)-(4). *United States v. Anderson*, 50 M.J. 447, 448 (C.A.A.F.1999). The appellant contends both

---

2. The charges on which the appellant was arraigned allege offenses against A1C ECB and Mrs. AMM; however, at the time of trial, both women had married or remarried, resulting in name changes. The references in this opinion reflect those name changes.

3. U.S. Const. amend. V and VI. The appellant does not assert a violation of Article 10, UCMJ, 10 U.S.C. § 810. We agree. Article 10 protections are triggered by placement in pretrial arrest or confinement. Neither circumstance occurred here.

4. Article 32, UCMJ, 10 U.S.C. § 832.

standards were violated. With regard to pretrial restraint, he asserts that on 3 June 2003, his squadron commander, Lieutenant Colonel (Lt Col) G, ordered him to remain in the "local area" and that the restriction remained in effect for more than 120 days. In the appellant's view, this order amounted to a "restriction in lieu of arrest" under R.C.M. 304(a)(2), thereby triggering the 120–day clock of R.C.M. 707.[5] The appellant also asserts that more than 120 non-excluded days passed between the date charges were preferred on 20 November 2003 and the date of his arraignment on 23 August 2004.

With regard to the asserted pretrial restraint, the military judge found the appellant was never ordered to remain in the local area and that any restraints placed on the appellant prior to preferral of charges amounted, at most, to "conditions on liberty" that did not trigger the R.C.M. 707 speedy trial clock.

By its plain language, the R.C.M. 707 speedy trial provision encompasses only the types of pretrial restraint enumerated in R.C.M. 304(a)(2)-(4). "Conditions on liberty", another type of pretrial restraint defined in R.C.M. 304(a)(1), is not included. In this case, the appellant's commander, Lt Col G, testified he ordered the appellant to stay away from A1C EBS and to stay away from his former work area, where A1C EBS worked. Such actions are classic "conditions on liberty", in that they merely directed the appellant to refrain from doing certain acts. *See* R.C.M. 304(a)(1) and its Discussion. Lt Col G also indicated that while he does not recall doing so, when the allegations first surfaced, he may have suggested it would be a good idea for the appellant to "stick around" the area for a while, meaning the area of Valdosta, Georgia. He testified that if he made such a suggestion, it was of limited duration and he did so solely out of concern for the appellant's welfare and that of his family, not for criminal prosecution purposes. When the allegations surfaced, the appellant was in the middle of a PCS move, had already shipped all of his household goods, and was living on-base with his

family in temporary quarters. Considering those circumstances, and the serious nature of the allegations, Lt Col G was concerned about how the appellant and his family would react and wanted to make sure the appellant was not suicidal.

█ Limitations imposed for legitimate administrative reasons and not as a precursor to criminal prosecution do not qualify as "restraint" for purposes of R.C.M. 304 and 707. R.C.M. 304(h); *United States v. Bradford*, 25 M.J. 181, 186 (C.M.A.1987); *United States v. McCrimmons*, 39 M.J. 867, 869 (N.M.C.M.R.1994).

Lt Col G did not recall ever ordering the appellant to remain in the local area and was "pretty sure" he did not do so. He also did not restrict the appellant to the installation, and would have allowed the appellant to take leave out of the area had the appellant requested it. Further, Lt Col G was certain that if he had ordered the appellant to remain in the local area, he would have talked to his own commander before issuing such an order. Neither Lt Col G's commander, nor others in the appellant's chain of command recalled anyone ordering the appellant to remain in the local area.

The appellant directs our attention to a 21 November 2003 e-mail issued to him by Lt Col G's successor, Lt Col C, purporting to remove Lt G's prior "restriction", arguing that if he was never restricted to the local area, there would have been no need for Lt Col C to later remove that restriction. The argument is a logical one and, absent evidence to the contrary, would be persuasive. However, Lt Col C testified he sent the e-mail in response to a letter from the appellant's civilian defense counsel complaining the appellant was under restriction. At the time he sent the e-mail, and thereafter, Lt Col C was not aware of any order actually issued by Lt Col G. Rather, he sent the e-mail only to clear up any misunderstanding on this issue by the appellant or his counsel.

Based on this evidence, the military judge's finding that the appellant was never ordered to remain in the Valdosta, Georgia,

---

5. Even if such an order were issued, it clearly would not constitute either arrest or confinement within the meaning of R.C.M. 304(a)(3)-(4), nor does the appellant contend that it did.

area is not clearly erroneous. We also agree with the military judge's determination that, even if such an order was issued, it at most amounted to a condition on liberty and did not rise to the level of a restriction in lieu of arrest within the meaning of R.C.M. 304(a)(2). The cited provision defines "[r]estriction in lieu of arrest" as an order "directing the person to remain within specified limits." *Id.* On its face, an order restricting an individual to the local area, in the instant case, Valdosta, Georgia, would seem to meet this definition. However, case law indicates application of R.C.M. 304(a)(2) is not so mechanical. Rather, "[t]he nature of restraint is determined by examining the totality of the circumstances." *United States v. Wagner,* 39 M.J. 832, 834 (A.C.M.R.1994) (quoting *United States v. Russell,* 30 M.J. 977, 979 (A.C.M.R.1990)).

A review of cases addressing the issue indicates that the key consideration is whether the purported "restriction" places any realistic, significant restraint on the liberty of the service member concerned. *Compare United States v. Wilkinson,* 27 M.J. 645 (A.C.M.R.1988) (Restricting a single soldier who lived in the barracks to the confines of the military installation was a "condition on liberty", not a "restriction" for speedy trial purposes, since the installation was a self-contained community with all the support facilities required to meet his needs.) *with Wagner,* 39 M.J. at 834 (Ordering a married soldier "from his off-post family quarters into the barracks", thereby separating him from his family, could impose a significant restriction on his liberty, rising to the level of "restriction in lieu of arrest" for speedy trial purposes.).

Based on the findings of fact by the military judge, any order that the appellant remain in the local area, if issued, placed no significant restraint on his liberty. The "local area" in question was that of Valdosta, Georgia. The appellant was not separated from his family or ordered to remain on base. On the contrary, he was allowed to move off-base with his family and to move freely about the community, going to and from the installation at will, subject only to the dictates of his assigned military duties. Further, the appellant was never told he could not go on leave and, although the appellant never requested leave during the period at issue, the overwhelming evidence at trial indicated he would have been granted leave had he desired it. Under these circumstances, any order or "suggestion" the appellant remain in the local area was at best a condition on liberty, and therefore did not trigger the speedy trial provisions of R.C.M. 707.

Given the above, and in the absence of any other qualifying pretrial restraint, the appellant's R.C.M. 707 speedy trial clock started on 20 November 2003 when charges were preferred. R.C.M. 707(a)(1). The appellant was arraigned 277 days later on 23 August 2004. R.C.M. 707(b)(1). However, not all of those days automatically count against the 120–day speedy clock. R.C.M. 707(c) provides that delays authorized by a military judge or the convening authority are excludable. In addition, "[p]rior to referral, the convening authority may delegate the authority to grant continuances to an Article 32 [UCMJ] investigating officer." R.C.M. 707(c)(1), Discussion; *United States v. Lazauskas,* 62 M.J. 39, 41 (C.A.A.F.2005). Therefore, any delays approved by the Article 32, UCMJ, investigating officer (IO) also are excludable. *Lazauskas,* 62 M.J. at 41. When reviewing such delays, the focus is on whether a qualified authority approved the delay, not on which party is responsible for the delay. *Id.* As long as the length of the delay is reasonable and the approving official did not abuse his discretion, it is excluded from the 120–day speedy trial clock. *Id.*

Based on the evidence presented at trial, the military judge excluded from the 120–day speedy trial clock the time required to process a Resignation in Lieu of Court–Martial (RILO) submitted by the appellant. He also excluded the time period from the date a military judge was first available to try the case and the initial trial date negotiated by the parties, which in this case was also the date of arraignment. We agree with both exclusions and note that the appellant specifically agreed at trial that exclusion of the time needed to process his RILO was appropriate. The appellant also agrees that the military judge properly excluded the time specifically

excluded by the GCMCA. We agree that exclusion is also appropriate, with the exception, as noted above, that the time excluded by the GCMCA began on 24 January 2004.

■ Over the appellant's objection, the military judge also found that the Article 32, UCMJ, IO properly excluded the period from 8 December 2003 until 5 February 2004, which overlaps, to some extent, the delay authorized by the GCMCA. That additional time period is the focus of the appellant's appeal. If it is excluded, the appellant was brought to trial within 116 days of preferral. If not, more than 120 days passed and the appellant's R.C.M. 707 rights were violated.[6] We concur with the military judge and find no violation.

The Article 32, UCMJ, IO was appointed by the Special Court–Martial Convening Authority (SPMCA) on 24 November 2003 and was specifically delegated authority to grant delays under R.C.M. 707(c)(1). On 8 December 2003, the IO issued a memorandum setting 5 February 2004 as the Article 32, UCMJ, hearing date. Although that memorandum did not use the term "delay", the IO testified that when he issued it, he was exercising the authority delegated to him under R.C.M. 707(c)(1) and that the 5 February 2004 date was based on the agreement of both parties. Based on that evidence, the military judge's finding that the IO excluded the period from 8 December 2003 to 5 February 2004 was not clearly erroneous. The fact that the IO's scheduling memorandum did not characterize the action as a "delay" is of little significance. "[T]he plain meaning of R.C.M. 707(c) is that any interval of time between events is a 'delay' and, if approved by the appropriate authority, is excluded from the government's accountable time under R.C.M. 707(a)." *United States v. Nichols*, 42 M.J. 715, 721 (A.F.Ct.Crim.App.1995). The absence of a specific request for a delay by either party is not critical. "There is no requirement in R.C.M. 707(c) for someone to ask for a 'delay' in order for an interval of time to be a 'delay.'" *Id.* at 720. Given the

authority delegated to the IO and that the Article 32, UCMJ, hearing date was set based on agreement of the parties, the length of the delay was reasonable and the IO did not abuse his discretion by authorizing it.

At trial and during oral argument before this Court, the appellant pointed to a series of e-mails between the trial counsel and the civilian defense counsel's office suggesting the Article 32, UCMJ, hearing was originally set for 26 January 2004, and argues that any delay must therefore only have been from that date until 5 February 2004. However, those e-mails do not include the IO, who was the official responsible for setting the hearing date and conducting the Article 32, UCMJ, hearing. The IO testified that such earlier date was one that the parties were discussing, along with others, but that he, as the IO, ultimately settled on 5 February 2004.

During oral argument, the appellant asserted that the GCMCA, by approving a delay from 24 January 2004 to 5 February 2004, implicitly disapproved all other potential delays and overrode any authority of the Article 32, UCMJ, hearing officer's ability to grant any other delay. We disagree. The plain wording of the memorandum supports neither proposition. Further, the Article 32, UCMJ, hearing officer was appointed by the SPMCA and the IO's memorandum delaying the hearing was issued on 8 December 2003, before the case was ever forwarded to the GCMCA.[7] There is no evidence the SPMCA ever revoked the authority he delegated to the IO to approve delays under R.C.M. 707(c)(1).

### Fifth and Sixth Amendments

■ We also find no violation of the appellant's Constitutional speedy trial rights. To prevail on a Fifth Amendment speedy trial violation claim, the appellant bears the burden of showing that any delays prior to preferral of charges were the result of "an egregious or intentional tactical delay" by the government and that he suffered "actual prejudice." *United States v. Thomas*, 49

---

6. Our R.C.M. 707 calculations are included in the appendix to this opinion.

7. Indeed, the case had still not been forwarded to the GCMCA when he issued his memorandum approving a delay from 24 January 2004 to 5 February 2004.

M.J. 200, 208 (C.A.A.F.1998). Mere speculation or conclusory allegations unsupported by the evidence are insufficient. *United States v. Reed,* 41 M.J. 449, 452 (C.A.A.F.1995). The appellant has not met that burden here.

 The appellant's Sixth Amendment speedy trial claim is assessed using the criteria established by the Supreme Court in *Barker v. Wingo.*[8] We are required to balance the length of the pretrial delay, the reasons for the delay, whether the appellant demanded a speedy trial, and the extent of any prejudice the appellant suffered because of the delay. *Barker,* 407 U.S. at 530, 92 S.Ct. 2182; *United States v. Proctor,* 58 M.J. 792, 798 (A.F.Ct.Crim.App.2003). Applying these factors, we find no Sixth Amendment violation. Although the delay was a lengthy one, it was reasonable, particularly given that large portions of the time were based on the need to process the appellant's RILO or to accommodate the schedule of the appellant's civilian defense counsel. During this time period, the appellant made no speedy trial demand and there is no evidence the appellant was prejudiced by the delay.

### Legal and Factual Sufficiency

In his second assignment of error, the appellant claims the evidence was legally and factually insufficient to support his conviction of the offenses to which he pled not guilty.

 We review the appellant's claim of legal and factual insufficiency de novo, examining all the evidence properly admitted at trial. *See* Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Washington,* 57 M.J. 394, 399 (C.A.A.F.2002). The test for legal sufficiency is whether, considering the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the contested crimes beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Quintanilla,* 56 M.J. 37, 82 (C.A.A.F.2001); *United States v. Turner,* 25 M.J. 324 (C.M.A. 1987). The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not

having personally observed the witnesses, we ourselves are convinced of the appellant's guilt beyond a reasonable doubt. *Turner,* 25 M.J. at 325. Both standards are met here.

Mrs. AMP testified she and her ex-husband, then an airman newly assigned to the appellant's unit, attended a unit camping trip with the appellant and others in June 2002. On the second night of the trip, Mrs. AMP was not feeling well, so she took her normal medications and laid down in a camper to rest. At the time, she was on anti-depressant medication and was also prescribed a variety of narcotic pain medication for a long-term intestinal illness, all of which generally made her sleepy. Shortly thereafter, the appellant came into the camper and exposed his penis. He then told Mrs. AMP that since he had "showed her his", she should "show him hers" and tried to pull her legs apart to look up her shorts. Mrs. AMP resisted, told the appellant to leave her alone and got her husband. The appellant left, but thereafter came back several times. Each time, Mrs. AMP sought help from her husband and the appellant left. Later, Mrs. AMP's husband and others went swimming and she fell asleep in the camper. She awoke to find the appellant laying on top of her, with his hand on her mouth and his penis penetrating or about to penetrate her vagina. The appellant proceeded to engage in forced sexual intercourse with Mrs. AMP. When he was done, he told Mrs. AMP that if she ever told anyone, he would say it was consensual and that all he had to do was sign a paper and her husband would be out of the Air Force.

A1C EBS testified she attended a camping trip with the appellant and others in her unit in June 2003. After an evening of heavy drinking, she became extremely drunk and engaged in a drinking card game which required the players to expose themselves. Several times during the course of the game, the appellant, who was sitting next to A1C EBS, put his hand on her thigh and started to move it up toward her vaginal area. A1C EBS did not consent to the appellant's touching and each time removed his hand. Later, A1C EBS, wearing her bathing suit, crawled into the back of her truck to sleep and passed out. The appellant was not in the

---

**8.** 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

truck when she got into it. When A1C EBS awoke later that morning, she was shocked to find the appellant laying next to her and her bathing suit bottom partially rolled down on one side. When she got out of the truck, she noticed her vaginal area was sore, and when she went to the bathroom, semen dripped from her vagina. The appellant admitted engaging in sexual intercourse with A1C EBS, but contended it was consensual. A1C EBS testified she was passed out drunk and never consented to intercourse with the appellant.

The testimony of Mrs. AMP and A1C EBS, taken together with the other evidence of record properly admitted at trial, and considered in the light most favorable to the prosecution, was sufficient for a reasonable factfinder to find beyond a reasonable doubt all essential elements of the offenses to which the appellant pled not guilty. Further, we ourselves are convinced beyond a reasonable doubt the appellant is guilty of all offenses of which he was found guilty. Mindful that we did not personally observe the witnesses, we find the testimony of both women credible and convincing.

*Erroneous Court–Martial Order*

The record contains two versions of the court-martial promulgating order-a clear text version and an expurgated version with sensitive information removed. Both versions mistakenly report the finding with regard to Specification 1, Charge III. The appellant pled guilty to that specification, except the words "with the intent to satisfy the sexual desires of the said Captain Rinney J. Fujiwara." The orders incorrectly state the appellant was found guilty as charged. In fact, the government withdrew the excepted language after pleas and prior to findings. The expurgated version also incorrectly indicates the appellant pled guilty to Specification 1 of Charge II. We direct new promulgating orders be prepared correctly reflecting the appellant's pleas and the findings.

*Conclusion*

We conclude the approved findings and sentence are correct in law and fact and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ; *United States v. Reed*, 54 M.J. 37, 41 (C.A.A.F.2000). Accordingly, the approved findings and sentence are

AFFIRMED.

APPENDIX
R.C.M. 707 SPEEDY TRIAL ACCOUNTABILITY
Table of Computations

| Date | Date | Total Days | R.C.M. 707 Accountable Days |
|---|---|---|---|
| 20 Nov 03 | Charges preferred | 0 | 0 |
| 24 Nov 03 | Article 32, UCMJ, IO appointed | 4 | 4 |
| 8 Dec 03 | IO sets/delays Article 32, UCMJ, for 5 February 2004 | 18 | 17 |
| 7 Jan 04 | GCMCA excludes 24 January 2003 to 5 February 2004 | 48 | 17 |
| 5 Feb 04 | Article 32, UCMJ, hearing initiated | 77 | 18 |
| 1 Apr 04 | Charges Referred | 133 | 73 |
| 1 Apr 04 | Appellant submits RILO | 133 | 73 |
| 25 May 04 | Secretary of Air Force denies RILO | 187 | 74 |
| 6 Jul 04 | First available military judge date | 229 | 116 |
| 23 Aug 04 | Initial trial date/arraignment | 277 | 116 |