# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

———————————

## No. ACM 40065

———————————

### UNITED STATES
*Appellee*

v.

### Nathaniel R. HEPPERMANN
Airman First Class (E-3), U.S. Air Force, *Appellant*

———————————

Appeal from the United States Air Force Trial Judiciary

Decided 28 September 2022

———————————

*Military Judge:* Brett A. Landry.

*Sentence:* Sentence adjudged on 3 December 2020 by GCM convened at Cannon Air Force Base, New Mexico. Sentence entered by military judge on 22 December 2020: Dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, reduction to E-1, and a reprimand.

*For Appellant:* Captain David L. Bosner, USAF; Philip D. Cave, Esquire.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Joshua M. Austin, USAF; Major John P. Patera, USAF; Mary Ellen Payne, Esquire.

Before POSCH, RICHARDSON, and CADOTTE, *Appellate Military Judges*.

Judge RICHARDSON delivered the opinion of the court, in which Senior Judge POSCH and Judge CADOTTE joined.

———————————

## PUBLISHED OPINION OF THE COURT

———————————

RICHARDSON, Judge:

A general court-martial composed of a military judge sitting alone found Appellant guilty, contrary to his pleas, of one specification each of solicitation to distribute and solicitation to produce child pornography, in violation of Article 82, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 882; and one specification of sexual abuse of a child by communicating indecent language, in violation of Article 120b, UCMJ, 10 U.S.C. § 920b.[1] Appellant was sentenced to a dishonorable discharge, confinement for 18 months, forfeiture of all pay and allowances, reduction to the grade of E-1, and a reprimand. The convening authority took no action on the adjudged sentence.

Appellant raises the following issues on appeal: (1) whether the findings of guilt for both solicitation specifications are legally and factually sufficient because (a) the person being solicited was not subject to the UCMJ, and (b) the Government failed to prove extra language it added to the specifications; and (2) whether the military judge abused his discretion in denying a defense motion to dismiss the charges and specifications for a violation of Rule for Courts-Martial (R.C.M.) 707.[2] We find no prejudicial error to a substantial right of Appellant, and we affirm the findings and sentence.

## I. BACKGROUND

Appellant met MT on a dating website when Appellant was 19 years old. MT was 12 years old but told Appellant she was 13 years old. They communicated primarily through Snapchat, a social media platform. Their conversations quickly became sexual. Around 29 March 2019, Appellant asked MT to send him videos of her breasts and vagina. The next month, Appellant asked MT to sodomize herself with a hairbrush and show him. Later, while MT was with a friend, Appellant asked MT to insert her finger into her vagina while her friend recorded it for him. Throughout their mostly sexually themed conversations, Appellant and MT referred to Appellant as "Daddy."

Both MT's mother and KV, MT's mother's cousin, saw the messages on MT's phone on 3 June 2019. KV messaged Appellant using MT's phone, then called to confront him, saying she was MT's mother. Appellant lied about his age, with whom he lived, and his military status. After KV asked to speak to his supervisor, Appellant, who was on duty, handed his phone to a noncommissioned officer (NCO), Staff Sergeant (SSgt) AD, who in turn listened to the

---

[1] Unless otherwise noted, all references in this opinion to the UCMJ and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*).

[2] Appellant advises in his brief that he seeks to challenge the military judge's ruling only with respect to R.C.M. 707, and not also the Fifth and Sixth Amendments to the United States Constitution, U.S. CONST. amend. V, VI, as he did at trial.

complaint from KV. After SSgt AD told KV he could not punish the Appellant, he passed Appellant's phone to RS, an NCO senior to SSgt AD. Appellant was present while the NCOs spoke to KV on Appellant's phone.

At trial, the Government called MT, KV, and SSgt AD. It also called Air Force Office of Special Investigations (AFOSI) agents to detail their investigative steps. These steps included interviewing MT, MT's mother, and KV; seizing MT's two phones; and seizing Appellant's electronic devices, including a phone. The digital forensic expert who analyzed the seized phones also testified. He stated that MT had approximately 790 Snapchat messages between her and Appellant saved on her phone.

## II. DISCUSSION

### A. Legal and Factual Sufficiency

#### 1. Law

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). "Our assessment of legal and factual sufficiency is limited to the evidence produced at trial." *United States v. Rodela*, 82 M.J. 521, 525 (A.F. Ct. Crim. App. 2021) (citing *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993)), *rev. denied*, ___ M.J.___, No. 22-0111, 2022 CAAF LEXIS 278 (C.A.A.F. 12 Apr. 2022).

"The test for legal sufficiency is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, 77 M.J. 294, 297–98 (C.A.A.F. 2018) (quoting *United States v. Rosario*, 76 M.J. 114, 117 (C.A.A.F. 2017)). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted). The evidence supporting a conviction can be direct or circumstantial. *See United States v. Long*, 81 M.J. 362, 368 (C.A.A.F. 2021) (citing R.C.M. 918(c)) (additional citation omitted). "[A] rational factfinder[ ] could use his 'experience with people and events in weighing the probabilities' to infer beyond a reasonable doubt" that an element was proven. *Id.* at 369 (quoting *Holland v. United States*, 348 U.S. 121, 140 (1954)). "The term reasonable doubt . . . does not mean that the evidence must be free from conflict." *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). The "standard for legal sufficiency involves a very low threshold to sustain a conviction." *United States v. King*, 78 M.J. 218, 221 (C.A.A.F. 2019) (internal quotation marks and citation omitted).

"The test for factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, we are ourselves convinced of the appellant's guilt beyond a reasonable doubt." *Rodela*, 82 M.J. at 525 (alterations, internal quotation marks, and citation omitted). "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

We review an issue of statutory construction de novo. *United States v. Wilson*, 76 M.J. 4, 6 (C.A.A.F. 2017). "It is a general rule of statutory construction that if a statute is clear and unambiguous—that is, susceptible to only one interpretation—we use its plain meaning and apply it as written." *United States v. Schmidt*, 82 M.J. 68, 73 (C.A.A.F. 2022) (Sparks, J., announcing the judgment of the court) (citing *United States v. Kohlbek*, 78 M.J. 326, 331 (C.A.A.F. 2019)). "We may also resort to case law to resolve any ambiguity, although fundamentally case law must comport with the statute, not vice versa." *Id.* (alteration, internal quotation marks, and citation omitted).

The text of the UCMJ article proscribing solicitation states: "Any person subject to this chapter who solicits or advises *another* to commit an offense under this chapter (other than an offense specified in subsection (b))[3] shall be punished as a court-martial may direct." Article 82(a), UCMJ, 10 U.S.C. § 882(a) (emphasis added).

The President promulgated the maximum punishment for Article 82(a), UCMJ, as follows:

> Any person subject to the UCMJ who is found guilty of soliciting or advising another person to commit an offense not specified in Article 82(b) that, *if committed by one subject to the UCMJ, would be punishable under the UCMJ*, shall be subject to the following maximum punishment: dishonorable discharge, forfeiture of all pay and allowances, and confinement for 10 years, or the maximum punishment of the underlying offense, whichever is lesser.

*Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), pt. IV, ¶ 6.d.(3) (emphasis added).

---

[3] Article 82(b), UCMJ, 10 U.S.C. § 882(b), proscribes the solicitation of desertion, mutiny, sedition, and misbehavior before the enemy.

The President promulgated elements for the offense of solicitation under Article 82, UCMJ, as follows:

> (1) That the accused solicited or advised a certain person or persons to commit a certain offense under the UCMJ; and

> (2) That the accused did so with the intent that the offense actually be committed.

*MCM*, pt. IV, ¶ 6.b.(1)–(2). The first two elements for the offense of solicitation under Article 134, UCMJ, *Manual for Courts-Martial* (2016 ed.) (2016 *MCM*), pt. IV, ¶ 105.b.(1)–(2), were nearly identical to the present offense of solicitation under Article 82, UCMJ.[4] "[W]e are not bound by the President's interpretation of the elements of substantive offenses." *Wilson*, 76 M.J. at 6 (citing *United States v. Davis*, 47 M.J. 484, 486 (C.A.A.F. 1998)). However, the President's interpretations of offenses are persuasive authority. *See United States v. Forrester*, 76 M.J. 389, 396 (C.A.A.F. 2017) (citation omitted).

The elements of solicitation to distribute child pornography, as alleged in Specification 1 of Charge I, include that: (1) Appellant wrongfully solicited MT to commit the offense of distribution of child pornography, an offense under the UCMJ; and (2) Appellant did so with the intent that the distribution of child pornography actually be committed. *See MCM*, pt. IV, ¶ 6.b.(1)–(2). As drafted, the specification also alleged that: (3) Appellant's solicitation was of a nature to bring discredit upon the armed forces.[5] Similarly, the elements of solicitation to produce child pornography, as alleged in Specification 2 of Charge I, include that: (1) Appellant wrongfully solicited MT to commit the offense of production of child pornography, an offense under the UCMJ; and (2) Appellant did so with the intent that the production of child pornography actually be committed, *see id.*; with the additional language that (3) Appellant's solicitation was of a nature to bring discredit upon the armed forces.

The elements of the offenses of distribution of child pornography and production of child pornography, in violation of Article 134, UCMJ, 10 U.S.C. § 934, are similar: (1) the accused knowingly and wrongfully produced, or distributed to another, child pornography; and (2) under the circumstances, the

---

[4] The significant difference is a clarification that the crime solicited does not include one of the four offenses named in Article 82(b), UCMJ, of the 2019 *MCM*. The third and last element included the terminal elements of Article 134, UCMJ, which were not carried into Article 82(a), UCMJ.

[5] In its answer to Appellant's assignments of error, the Government acknowledges that this was an element of the offenses "due to the charge as crafted in this case." Therefore, we assume without deciding that the Government was required to prove the alleged language, even though not required by the UCMJ.

accused's conduct was (a) to the prejudice of good order and discipline in the armed forces, and or (b) was of a nature to bring discredit to the armed forces. *MCM*, pt. IV, ¶ 95.b.(3)–(4).

The offense allegedly solicited must have been one that could possibly be committed by the solicited person. *See United States v. Sutton*, 68 M.J. 455, 459 (C.A.A.F. 2010) (finding that a child lifting her shirt to expose her breasts upon the appellant's request "could not constitute the criminal offense of indecent liberties with a child *by [that child]*," as alleged). "'Child pornography' means material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 95.c.(4). The term "sexually explicit conduct" includes, *inter alia*, actual or simulated sodomy, masturbation, and "lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 95.c.(10). "'Distributing' means delivering to the actual or constructive possession of another." *MCM*, pt. IV, ¶ 95.c.(6). "'Producing' means creating or manufacturing." *MCM*, pt. IV, ¶ 95.c.(9). Conduct of a nature to bring discredit upon the armed forces is conduct which "has a tendency to bring the service into disrepute or [ ] tends to lower it in public esteem." *MCM*, pt. IV, ¶ 91.c.(3).

Until recently, solicitation was an enumerated offense under Article 134, UCMJ.[6] The offense of solicitation under Article 134, UCMJ (2016 *MCM*), required as an element that the accused's conduct be to the prejudice of good order and discipline or of a nature to bring discredit upon the armed forces. *See* 2016 *MCM*, pt. IV, ¶ 105.b.(3). Regarding that offense, "[i]n our court, it is settled law that 'the solicitation of another person to commit an offense which, if committed by one subject to the UCMJ, would be punishable under the UCMJ, is an offense cognizable under Article 134[, UCMJ].'" *United States v. Lozicki*, No. ACM 39643, 2020 CCA LEXIS 469, at *28 n.14 (A.F. Ct. Crim. App. 28 Dec. 2020) (unpub. op.) (alteration in original) (quoting *United States v. Knarr*, 80 M.J. 522, 530 n.6 (A.F. Ct. Crim. App. 2020), *rev. denied*, 80 M.J. 348 (C.A.A.F. 2020)), *rev. denied*, 81 M.J. 236 (2021). The court in *Lozicki* considered the offense of solicitation to produce child pornography in violation of Article 134, UCMJ (2016 *MCM*). *Id.* at *1. The court in *Knarr* considered the offense of solicitation to distribute child pornography in violation of Article 134, UCMJ (2016 *MCM*). *Knarr*, 80 M.J. at 526.

**2. Analysis**

---

[6] *See MCM*, App. 17, at A17-1 ¶ 6 (explaining how solicitation under Article 134, UCMJ, in the previous version of the *Manual for Courts-Martial* now is incorporated in Article 82(a), UCMJ).

### a. Scope of Article 82, UCMJ

The question presented here is whether the person being solicited must be subject to the UCMJ to sustain a conviction under Article 82(a), UCMJ. We focus our review on the direct legislative and executive language, as well as case law.[7]

Appellant recognizes that, as interpreted by case law, the offense of solicitation when it was enumerated by the President under Article 134, UCMJ, did not require the person solicited to be subject to the UCMJ. Appellant argues that the offense of solicitation now under Article 82, UCMJ, does carry that requirement:

> In Article 82, UCMJ, *Congress* chose specifically the words to delineate that criminal solicitations are those that solicit "offenses under the UCMJ." *2019 MCM*, Pt. IV, para. 6(b)(1). To the extent old case law provides a rule to the contrary, those cases are not viable in line with the plain text of the statute Congress recently created.

Appellant infers the President had a similar understanding. Appellant argues the President could have written the first element of Article 82(a), UCMJ, to include "soliciting or advising someone to commit any act under the code that would be a violation of the UCMJ if the solicited or advised entity was subject to this chapter," but did not. Appellant concludes: "Because Congress and the President crafted language indicating the solicitation must be one to 'commit an offense under the UCMJ,' that is what is factually and legally required."

Appellant also addresses the language in the *MCM* outlining the maximum punishment for one found guilty of "soliciting or advising another person to commit an offense . . . *that, if committed by one subject to the UCMJ, would be punishable under the UCMJ.*" *MCM*, pt. IV, ¶ 6.d.(3). Appellant claims this language is "commentary" and "discussion" by "the drafters" of the *MCM*; he does not attribute it to the President. Regardless, he argues Congress could have put that language in the statute, and it did not. He argues Congress crafted Article 82, UCMJ, to "criminalize [ ] soliciting or advising *military members* to commit offenses under the UCMJ," and "likely did not seek to deter future criminal activity of all Americans with the [UCMJ]." (Footnote omitted.)

---

[7] Appellant has not cited any express legislative history. Indeed, the legislative history reveals an intent merely to consolidate the general solicitation offense under Article 134 into Article 82 as part of a larger reorganization of the punitive articles of the UCMJ. *See* S. REP. NO. 114-255, at 613 §§ 5301, 5303 (2016); H.R. REP. NO. 114-537, at 612 §§ 6901, 6903 (2016).

Appellant has not convinced this court that the offense of solicitation under Article 82(a), UCMJ, requires that the person solicited be subject to the UCMJ. First, looking at the plain language, Article 82(a) requires that a person subject to the UCMJ solicit "another to commit an offense" under the UCMJ—not solicit *another person subject to the UCMJ* to commit an offense under the UCMJ. Second, Appellant cites no authority—and we find none—that Congress intended to change the offense of solicitation previously enumerated under Article 134, UCMJ, to add such a requirement.[8] Next, assuming that the statute's language is ambiguous, we find convincing the rationale of the case law addressing this issue in the context of solicitation before it was codified in Article 82, UCMJ.[9] The essence of the offense of solicitation is the invitation to engage in criminal conduct. *See, e.g.*, *United States v. Davis*, 39 M.J. 1110, 1112 (A.F.C.M.R. 1994); *United States v. Gonzales*, 19 M.J. 951, 952 (A.F.C.M.R. 1985); *United States v. Hanner*, No. ACM S28497, 1993 CMR LEXIS 61, at *5 (A.F.C.M.R. 28 Jan. 1993) (unpub. op.). Appellant did just that—he asked another person to engage in acts that our laws have deemed to be criminal conduct.

Finally, we are persuaded by the President's language addressing the maximum punishment authorized for a violation of Article 82(a), UCMJ, which plainly anticipates the person being solicited may or may not be subject to the UCMJ.[10] We hold that the solicitation of another person to commit an offense that, if committed by one subject to the UCMJ, would be punishable under the UCMJ, is an offense cognizable under Article 82(a), UCMJ.

### b. "Of a nature to bring discredit"

The solicitation offenses in this case were charged under Article 82(a), UCMJ, but included an element used in Clause 2 of Article 134, UCMJ: that the conduct "was of a nature to bring discredit upon the armed forces." *See*

---

[8] "Service courts have routinely rejected" arguments that the person solicited must be subject to the UCMJ. *United States v. Wiley*, No. 201600120, 2017 CCA LEXIS 538, at *41 (N.M. Ct. Crim. App. 10 Aug. 2017) (unpub. op.). In its reorganization and consolidation of solicitation offenses into Article 82(a), UCMJ, Congress could have indicated it was changing the offense in response to how the courts have interpreted this language for decades, but it did not. *See United States v. Blanks*, 77 M.J. 239, 242 (C.A.A.F. 2018) (noting that Congress can amend a statute to depart from judicial interpretations, and that its failure to do so enhances the precedential force of those interpretations).

[9] Our approach is not novel. *See United States v. Mitchell*, 15 M.J. 214, 217 (C.M.A. 1983) ("There is no logical distinction to be made between Articles 82 and 134 in terms of the specific intent required to prove the crime of solicitation.").

[10] The President's interpretation of substantive offenses in Part IV of the MCM is persuasive but not binding authority. *See Forrester*, 76 M.J. at 395–96 (citations omitted).

*MCM*, pt. IV, ¶ 91.b.(2). Appellant argues that case law relating to proof of that element should not apply to the specifications in his case, charged under Article 82(a), UCMJ. Specifically, he argues we should not apply *United States v. Phillips*, 70 M.J. 161 (C.A.A.F. 2011).

In *Phillips*, the United States Court of Appeals for the Armed Forces (CAAF) found that for an offense charged in violation of Clause 2 of Article 134, UCMJ, "proof of the conduct itself *may* be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that, under all the circumstances, it was of a nature to bring discredit upon the armed forces." *Id.* at 163. Appellant claims that, in this case charged in violation of Article 82, UCMJ, the factfinder could not just infer from the facts and circumstances surrounding the offense that the Clause 2 language was met beyond a reasonable doubt, but had to be presented with direct evidence. Moreover, Appellant claims the only evidence presented on this issue in his case was that Appellant's conduct did *not* bring discredit upon the armed forces.

Appellant points to this exchange during cross-examination between trial defense counsel and KV:

> Q. Ma'am, let me just ask you, you have a respect for the military, right?
>
> A. Yes.
>
> Q. You respect the Air Force.
>
> A. Absolutely.
>
> Q. And this incident doesn't make you respect the military and the Air Force any less, right?
>
> A. Can you rephrase that? Sorry. What do you mean?
>
> Q. So, knowing about these messages doesn't make you respect the military any less?
>
> A. Oh, no. I have the same respect for the military.[11]

---

[11] Earlier, during direct examination, trial counsel asked KV what "emotional reaction" she had to reading the messages between Appellant and MT. She replied, "Yeah, I'm disgusted." Trial defense counsel objected based on relevance. Trial counsel asserted the question was for effect on the listener; she did not assert the question was to prove the service-discrediting nature of the solicitations. The military judge sustained the objection. While this excluded evidence would have been relevant to whether Appellant's conduct was of a nature to bring discredit, we do not consider it in performing our review of this case. *See United States v. Roderick*, 62 M.J. 425, 431 (C.A.A.F. 2006) (noting the Courts of Criminal Appeals may not consider evidence excluded at trial in performing their appellate review function under Article 66, UCMJ).

"Whether any given conduct [is service discrediting] is a question for the trier of fact to determine, based upon all the facts and circumstances; it cannot be conclusively presumed from any particular course of action." *Phillips*, 70 M.J. at 165. "[T]he degree to which others became aware of the accused's conduct may bear upon whether the conduct is service discrediting," but actual public knowledge is not a prerequisite. *Id.* at 166. "The trier of fact must determine beyond a reasonable doubt that the conduct alleged actually occurred and must also evaluate the nature of the conduct and determine beyond a reasonable doubt that [the appellant]'s conduct would tend to bring the service into disrepute if it were known." *Id.* (citing *United States v. Saunders*, 59 M.J. 1, 11 (C.A.A.F. 2003)).

The military judge was presented with KV's views, but he was not required to accept them. *See United States v. Birdsall*, 47 M.J. 404, 410 (C.A.A.F. 1998) (recognizing the function of a jury is to weigh evidence and determine credibility). We note KV's testimony on this point was left unexplored; she was not asked why her respect for the military at the time of Appellant's court-martial was not affected by "this incident." Moreover, as the factfinder, the military judge could consider other evidence in determining whether Appellant's conduct tended to discredit the service, including the content of the messages alone. *See United States v. Anderson*, 60 M.J. 548, 555 (A.F. Ct. Crim. App. 2004) (finding, after its review of graphic images of child pornography, that they "remove any reasonable doubt that they are . . . of a nature to bring considerable discredit upon the armed forces"); *see also United States v. Richard*, ___ M.J. ___, No. 22-0091, 2022 CAAF LEXIS 637, at \*10–11, 15 (C.A.A.F. 7 Sep. 2022) (in a case involving Article 134, UCMJ, finding evidence that only *tends* to prejudice good order and discipline is not sufficient proof of that element, and suggesting it may be sufficient proof of conduct of a nature to bring discredit upon the armed forces). We find the military judge had a sufficient basis from the evidence introduced at trial to determine beyond a reasonable doubt that Appellant's conduct was of a nature to bring discredit upon the armed forces.

We conclude that a rational factfinder could have found beyond a reasonable doubt all the elements[12] of Appellant's convicted offenses, including their

---

[12] We find some support for an argument that the Clause 2 language was not an essential element of the solicitation offenses the Government needed to prove beyond a reasonable doubt. "An allegation in the specification which is unnecessary to prove the offense and does not contradict any material allegation can generally be disregarded as surplusage." *United States v. Duke*, 37 C.M.R. 80, 84 (C.M.A. 1966) (citations omitted); *see also United States v. Miller*, 471 U.S. 130, 136 (1985) ("A part of the indictment unnecessary to and independent of the allegations of the offense proved may normally

service-discrediting nature. Furthermore, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's convictions both legally and factually sufficient.

**B. Speedy Trial Pursuant to R.C.M. 707**

**1. Additional Facts**

On 6 June 2019, Appellant's commander restricted him to base and from certain places on base where he was more likely to encounter children. On 4 October 2019, without providing Appellant advance notice, the Government requested the convening authority exclude time under R.C.M. 707 for the period 25 June 2019 to 4 October 2019—101 days. During this period, AFOSI agents sent seized electronic devices for analysis, and the analyses were either completed or in progress. On 7 October 2019—day 123 of Appellant's restriction to limits—the convening authority approved the request. Appellant was released from the restriction on 6 December 2019, after 183 days. Charges were preferred against Appellant on 21 April 2020.

Before trial, Appellant filed a motion to dismiss the charges and specifications as a remedy for violation of Appellant's rights to a speedy trial. Appellant alleged the Government violated his rights afforded by R.C.M. 707, and that this violation implicated Appellant's Fifth and Sixth Amendment[13] rights, requiring dismissal with prejudice. Additionally or alternatively, Appellant argued that if the trial court found no constitutional violation, his requested remedy for the R.C.M. 707 violation was dismissal without prejudice. The trial judge denied Appellant's motion. He found that

> The crux of the [D]efense's argument alleges an R.C.M. 707 violation dating from the accused's restriction to Cannon [Air Force Base]. Specifically, the [D]efense takes issue with a previous exclusion of time granted by the [special court-martial convening authority] (from 25 Jun[e 20]19 – 4 Oct[ober 20]19) in regard to the calculation of days under R.C.M. 707(a) dating from the imposition of pretrial restraint against the accused on 6 Jun[e 20]19. As is made clear by R.C.M. 707(b)(3)(B), this argument is

---

be treated as a 'useless averment' that 'may be ignored.'" (quoting *Ford v. United States*, 273 U.S. 593, 602 (1927))); *cf. United States v. English*, 79 M.J. 116, 120 (C.A.A.F. 2019) (finding the Government was required to prove facts that it alleged which "narrowed the scope of the charged offense," specifically the type of force used in the assault).

[13] U.S. CONST. amend. V, VI.

moot in regard to calculation of the current R.C.M. 707(a) clock. The [c]ourt finds that a significant period elapsed between the accused's release from pre-trial restraint on 6 December 2019 and preferral of charges on 21 April 2020. This had the legal effect of beginning a new R.C.M. 707(a) clock beginning on the date of preferral of charges. Since only 72 days elapsed on the R.C.M. 707 clock that ran from 21 April 2020 until the accused was arraigned, there is no speedy trial violation under R.C.M. 707.

The military judge also found that even if the speedy trial clock was not "reset," "no relief [was] warranted" under the Sixth Amendment and no Government action in this case "would give rise to a Fifth Amendment violation." In his analysis, the military judge found "the [G]overnment's reasons for the delay [from 25 June 2019 until arraignment] cannot be attributed to neglect or a lack of due diligence in processing the case" and most of the days were "largely attributable to delays resulting from difficulties accessing the forensic digital evidence that would appear to make up the majority of the [G]overnment's case."

**2. Law**

"Whether an appellant received a speedy trial is a question we review de novo." *United States v. Fujiwara*, 64 M.J. 695, 697 (A.F. Ct. Crim. App. 2007) (citations omitted). "We give substantial deference to findings of fact made by the military judge and will not overturn such findings unless they are clearly erroneous." *Id.* (citations omitted). A military accused may seek relief for alleged speedy trial violations under R.C.M. 707. *See United States v. Tippit*, 65 M.J. 69, 73 (C.A.A.F. 2007); *Fujiwara*, 64 M.J. at 697.

"The accused shall be brought to trial within 120 days after . . . [t]he imposition of restraint under R.C.M. 304(a)(2)–(4)." R.C.M. 707(a)(2). The form of restraint includes restriction in lieu of arrest, arrest, and confinement; it does not include conditions on liberty. R.C.M. 304(a)(1)–(4). "Restriction in lieu of arrest is the restraint of a person by oral or written orders directing the person to remain within specified limits," to include restriction to base. R.C.M. 304(a)(2). When "the accused is released from pretrial restraint for a significant period, the 120-day time period under this rule shall begin on the earlier of" the date of preferral of charges or the date of reimposition of pretrial restraint. R.C.M. 707(b)(3)(B)(i)–(ii).[14]

---

[14] R.C.M. 707(b)(3)(B)(iii) contains another trigger—entry on active duty under R.C.M. 201—which is not relevant to our analysis in the present case.

A violation of R.C.M. 707(a)(2) "will result in dismissal of the affected charges." R.C.M. 707(d). "Dismissal will be with or without prejudice to the [G]overnment's right to reinstitute court-martial proceedings against the accused for the same offense at a later date." R.C.M. 707(d)(1).

R.C.M. 707 "does not preclude after-the-fact approval of a delay by a convening authority that otherwise meets good-cause and reasonableness-in-length standards." *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997). Also, R.C.M. 707 does not preclude the convening authority from approving an *ex parte* request for a delay; it is the non-binding Discussion that recommends delays should not be granted *ex parte*. *See* R.C.M. 707(c)(1), Discussion. "The discussion does not elaborate on the nature of this [recommendation], and [precedential] case law has not addressed the significance of this discussion."[15] *United States v. Richards*, 2016 CCA LEXIS 285, *93–94 (A.F. Ct. Crim. App. 2 May 2016) (unpub. op.). The Government in *Thompson* had requested exclusion of time *ex parte* and *post hoc*; the CAAF addressed the latter and not the former. *Thompson*, 46 M.J. at 475.

**3. Analysis**

In his brief to this court, Appellant narrows the R.C.M. 707 issue to "the 183 days of restraint Appellant served between 6 June 2019 and 6 December 2019." Appellant asks that we set aside and dismiss the charges without prejudice because Appellant was not released from his restrictions within 120 days, and those days the convening authority excluded under R.C.M. 707(c) should be counted because the Government obtained the exclusion *ex parte* and *post hoc*. We find the military judge did not err in denying the Defense's motion to dismiss.

First, we consider and reject Appellant's argument that the convening authority's excusal of time under R.C.M. 707 was an abuse of discretion. The convening authority had a reasonable basis to exclude the requested 101 days. We find the military judge's findings of fact on this point are supported by the record: that the delay "cannot be attributed to neglect or a lack of due diligence in

---

[15] Over the years, service courts have commented on this issue in unpublished opinions. *See, e.g.*, *United States v. Bodoh*, ARMY 20150218, 2018 CCA LEXIS 81, at *19 (A. Ct. Crim. App. 16 Feb. 2018) (unpub. op.) (only the non-binding Discussion to R.C.M. 707(c) recommends notice), *aff'd in part and reversed in part on other grounds*, 78 M.J. 231 (C.A.A.F. 2019); *United States v. Torres*, ARMY 20111168, 2014 CCA LEXIS 180, at *13 (A. Ct. Crim. App. 19 Mar. 2014) (unpub. op.) (the Discussion to R.C.M. 707(c) is non-binding); *United States v. Williams*, No. ACM 35122, 2004 CCA LEXIS 49, at *8–9 (A.F. Ct. Crim. App. 20 Feb. 2004) (unpub. op.) (holding the notice requirement is not contained in R.C.M. 707(c) and its Discussion is non-binding, and therefore any procedural error was harmless).

processing the case" and most of the days were "largely attributable to delays resulting from difficulties accessing the forensic digital evidence" the Government relied on to prove its case. Additionally, while arguably not the best practice, the convening authority is not required to first seek input from an accused before excluding time, and may exclude time that already has passed. *See Thompson*, 46 M.J. at 475.

Next, we address Appellant's contention that because he was not released from pretrial restrictions within 120 days of their imposition, charges that finally were preferred over four months after the restraint ended should be dismissed without prejudice. Appellant argues that "[t]he 'significant period' in R.C.M. 707(b)(3)(B) is more plausibly read to reset speedy trial clocks when an accused is released *before* the clock runs," and that "[a]fter it has run, R.C.M. 707(d) applies and the case shall be dismissed"—adding "[t]he only question is with or without prejudice." Appellant cites no law squarely supporting these propositions.

We understand Appellant's argument to be that the "clock" is not simply reset, but that the previous time on that clock is saved because it ran over 120 days, and that under R.C.M. 707, Appellant therefore is entitled to relief. We find no legal support for this argument. To the contrary, R.C.M. 707 does not require that "the period of any earlier restraint be added to the period after [preferral] of charges when calculating the 120-day period, regardless of whether a significant period of time elapses between the release from restraint and the [preferral] of charges." *United States v. Ruffin*, 48 M.J. 211, 213 (C.A.A.F. 1998) (citing *United States v. Facey*, 26 M.J. 421, 424 (C.M.A. 1988)).

The R.C.M. 707 120-day "clock" leading to arraignment starts at the earlier of (1) imposition of pretrial restraint without a significant period of release therefrom, (2) reimposition of pretrial restraint when a significant period elapsed after an accused's release therefrom, or (3) preferral of charges. *See Ruffin*, 48 M.J. at 212. In *Ruffin*, the appellant was released from pretrial restraint one day before charges were preferred, and no additional restraint was imposed. *Id.* at 213. The CAAF found that (1) and (2) did not apply, and specifically that the time between the appellant's release from restraint and his arraignment was a "significant period" under R.C.M. 707.[16] *Id.* Similarly, in this case (1) and (2) do not apply; Appellant was released from pretrial restraint and restraint was not reimposed. The R.C.M. 707 speedy-trial clock began on the date of preferral of charges against Appellant. *See Facey*, 26 M.J. at 424 (finding that "since no new restraint was imposed" after release from restraint,

---

[16] The meaning of "significant period" under R.C.M. 707 was not between release from restraint and preferral of charges (one day), but between release from restraint and arraignment (over five months). *Ruffin*, 48 M.J. at 212.

"the new 120-day period would commence when the charges were preferred"). The military judge did not err in finding that the applicable speedy-trial clock began at preferral of charges and a significant period lapsed after Appellant's release from pretrial restraint. We find that Appellant is not entitled to relief under R.C.M. 707.

## III. CONCLUSION

The findings and sentence entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).[17] Accordingly, the findings and the sentence are **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[17] "Though not raised as a separate assignment of error," Appellant asserts that the Statement of Trial Results and the entry of judgment "list Specification Codes attendant to Article 134, UCMJ," and not Article 82, UCMJ. Appellant articulates no error, but asserts correction is warranted. We take no action to correct these alleged errors. *See United States v. Baratta,* 77 M.J. 691, 695 (N.M. Ct. Crim. App. 2018).