# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

## No. ACM 39903 (reh)(f rev)

_____

### UNITED STATES
*Appellee*

**v.**

### Jesus MARTINEZ
Airman First Class (E-3), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary
*Upon Further Review*

Decided 31 October 2025

_____

*Military Judge*: Matthew P. Stoffel.

*Sentence*: Sentence adjudged 22 November 2022 by GCM convened at Fairchild Air Force Base, Washington. Sentence entered by military judge on 31 May 2023: Dishonorable discharge, confinement for 46 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant*: Captain Michael J. Bruzik, USAF.

*For Appellee*: Colonel Steven R. Kaufman, USAF; Colonel Mattew D. Talcott, USAF; Lieutenant Colonel Jenny A. Liabenow, USAF; Lieutenant Colonel J. Pete Ferrell, USAF; Major Vanessa Bairos, USAF; Major Jocelyn Q. Wright, USAF; Jack C. Korologos, Legal Intern;[1] Mary Ellen Payne, Esquire.

Before JOHNSON, KEARLEY, and MCCALL, *Appellate Military Judges*.

Chief Judge JOHNSON delivered the opinion of the court, in which Judge KEARLEY and Judge MCCALL joined.

_____

[1] Mr. Korologos is a legal intern who was at all times supervised by an attorney admitted to practice before this court.

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

───────────────

JOHNSON, Chief Judge:

In August 2019, a general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of sexual assault and one specification of attempted sexual assault, in violation of Articles 120 and 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 880.[2] The court-martial sentenced Appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1.

In his initial appeal to this court, Appellant raised 11 assignments of error. *United States v. Martinez*, No. ACM 39903, 2021 CCA LEXIS 250 (A.F. Ct. Crim. App. 21 May 2021) (unpub. op.) (*Martinez I*). In its initial opinion, this court found the convening authority failed to take action on Appellant's entire sentence as required by Executive Order 13,825, § 6(b), 83 Fed. Reg. 9889, 9890 (8 Mar. 2018), and Article 60, UCMJ, 10 U.S.C. § 860. *Martinez I*, unpub. op. at *2. As a result, this court remanded the record of trial to the Chief Trial Judge, Air Force Trial Judiciary, to resolve the ambiguous and incomplete convening authority action, and deferred consideration of the remaining issues. *Id.* at *7–8. We deferred addressing the remainder of Appellant's assignments of error until the record was returned. *Id.* at *2.

On remand, the convening authority approved the adjudged sentence and the case was re-docketed with this court. On further review, this court found prejudicial error in the military judge's findings instructions regarding attempted sexual assault. *United States v. Martinez*, No. ACM 39903 (f rev), 2022 CCA LEXIS 324, at *106–12 (A.F. Ct. Crim. App. 31 May 2022) (unpub. op.) (*Martinez II*). Consequently, this court set aside the findings of guilty as to that charge and specification and the sentence; dismissed that charge and specification; authorized a rehearing as to the dismissed charge and specification and the sentence; and affirmed the findings of guilty as to sexual assault. *Id.* at *136.

On 22 November 2022, a rehearing was held as to the sentence only. For the previously affirmed sexual assault conviction, a general court-martial composed of a military judge alone sentenced Appellant to a dishonorable discharge, confinement for 46 months, forfeiture of all pay and allowances, and

───────────────

[2] Unless otherwise indicated, all references to the UCMJ and Rules for Courts-Martial are to the *Manual for Courts-Martial, United States* (2019 ed.).

reduction to the grade of E-1. The military judge awarded Appellant 1,055 days of confinement credit for confinement served pursuant to the original sentence, 121 days of pretrial confinement credit, and 242 days of judicially ordered credit for illegal pretrial confinement. The military judge further ordered that 182 days of the confinement credit be applied against the adjudged total forfeiture of pay and allowances.

After the sentencing rehearing, Appellant raised three issues to this court: (1) whether Appellant is entitled to greater relief than that ordered by the military judge for illegal pretrial confinement; (2) whether the delay before Appellant's sentencing rehearing violated his speedy trial rights under Article 10, UCMJ, 10 U.S.C. § 810, and Rule for Courts-Martial (R.C.M.) 707; and (3) whether Appellant is entitled to relief for post-trial delay. However, this court remanded the record to the Chief Trial Judge, Air Force Trial Judiciary, for correction with respect to several missing appellate exhibits. *See United States v. Martinez*, No. ACM 39903 (reh), 2024 CCA LEXIS 551 (A.F. Ct. Crim. App. 16 Dec. 2024) (order). After correction, upon re-docketing, Appellant filed a brief with this court providing additional argument with respect to issue (3), but raised no additional issues.

We find no error materially prejudicial to Appellant's substantial rights with respect to issues (1) and (2), but we find relief for excessive post-trial delay appropriate, and take corrective action in our decretal paragraph.

## I. BACKGROUND

This court's 2022 opinion provides a concise summary of the evidence underlying Appellant's affirmed conviction for sexual assault. *Martinez II*, unpub. op. at *4–5. For purposes of the current appeal, we begin the relevant background with the issuance of this court's opinion in *Martinez II* affirming the Article 120, UCMJ, conviction, and setting aside the findings of guilty as to Article 80, UCMJ, and the sentence, and authorizing a rehearing. Following the issuance of the opinion, Appellant continued to be held in confinement at the Naval Consolidated Brig at Marine Corps Air Station Miramar, California (Miramar).[3]

This court issued *Martinez II* on 31 May 2022. On 19 July 2022, the Air Force Military Justice Law and Policy Division (AF/JAJM) sent a copy of *Martinez II* and accompanying memorandum to the Office of the Staff Judge Advocate (SJA) of the general court-martial convening authority (GCMCA). The

---

[3] The following background is drawn primarily from the rehearing military judge's findings of fact which, to the extent we refer to them here, we find to be supported by the record and not clearly erroneous.

memorandum provided instructions regarding a potential rehearing. In part, the memorandum advised, "Pursuant to R.C.M. 707(b)(3)(D), a new 120-day time period begins on the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing." The military judge for the rehearing subsequently determined the convening authority received the opinion on 20 July 2022.

On 28 July 2022, Appellant petitioned the United States Court of Appeals for the Armed Forces (CAAF) for review of *Martinez II*. On 16 August 2022, the CAAF denied the petition "without prejudice to Appellant's right to raise the matters asserted during the normal course of appellate review," explaining that "given the possibility of a rehearing, the petition is not ripe for review at this time." *United States v. Martinez*, 83 M.J. 19 (C.A.A.F. 2022) (mem.).

On or about 9 September 2022, the Fairchild Air Force Base (AFB) Victim Witness Assistance Program (VWAP) coordinator began contacting counsel for ES, the named victim of the Article 80, UCMJ, attempted sexual assault charge, to inquire whether ES was willing to participate in a rehearing. ES's counsel stated she would attempt to obtain a written decision from ES. The VWAP coordinator followed up repeatedly with ES's counsel between 14 September 2022 and 3 October 2022. On 4 October 2022, ES's counsel sent the VWAP coordinator an email from ES declining participation in a rehearing.

In the meantime, the VWAP coordinator began efforts to determine how KMT, the named victim of the affirmed Article 120, UCMJ, sexual assault charge, could request representation by a victims' counsel (VC), if she desired. On 7 October 2022, the VWAP coordinator spoke with KMT by telephone. KMT indicated she would like to participate in re-sentencing Appellant and would like to be represented by a VC.

On 17 October 2022, the Fairchild AFB legal office delivered the referral package to the GCMCA's SJA. On 19 October 2022, assistant trial counsel contacted Appellant's appellate counsel to inquire about her availability for a rehearing. On 21 October 2022, Appellant's trial defense counsel, Captain (Capt) SR, notified the Fairchild AFB legal office that she represented Appellant for his rehearing. During discussions with the legal office on 21 October 2022, Capt SR indicated the Defense would be ready for trial on 12 December 2022, expressed willingness to exclude time for speedy trial purposes until then, did not advise the legal office Appellant was still in confinement, and did not demand speedy trial.

On 24 October 2022, the Fairchild AFB legal office inquired of Capt SR where Appellant was located and whether he was still in confinement. On 1 November 2022, Capt SR responded that Appellant was still confined at

Miramar, should be released immediately, and demanded speedy trial. She also updated the Defense's availability for a rehearing to 30 November 2022.

On 2 November 2022, the GCMCA dismissed the Article 80, UCMJ, charge and specification and referred the case to a sentencing-only rehearing. The same day the base legal office contacted Miramar to inquire about Appellant's release.

The Defense made additional written demands for speedy trial on 4 and 8 November 2022. On 8 November 2022, trial defense counsel advised they were now available on 16 November 2022 for the rehearing. On 9 November 2022, trial defense counsel confirmed the Defense's agreement to the exclusion of 21 October 2022 to 16 November 2022, and again demanded speedy trial. On 13 November 2022, trial defense counsel updated their availability to 17 November 2022, and agreed to exclude 21 October 2022 to 17 November 2022 for speedy trial purposes.

Appellant was served with the referred charge sheet on 15 November 2022. Appellant's new additional trial defense counsel, Major (Maj) AA, subsequently asserted the Defense could no longer agree to the previously agreed-upon exclusion of time because Appellant had only been served with the referred charge sheet on 15 November 2022. Maj AA indicated the Defense would agree to exclude the period from 15 November 2022 until the Defense's case ready date.

Appellant was released from Miramar on 17 November 2022, and was present at his rehearing which began at Fairchild AFB on 21 November 2022. At no time following the issuance of *Martinez II* was Appellant ordered into *pretrial* confinement, nor were any pretrial confinement procedures required by R.C.M. 305 implemented.

At the rehearing, the Defense filed a motion to "dismiss the charges and specifications [sic]" due to violation of Appellant's speedy trial rights under the Due Process Clause of the Fifth Amendment;[4] Article 10, UCMJ; and R.C.M. 707. In the alternative, the Defense requested the military judge impose a sentence of no punishment due to Appellant's "blatant illegal pretrial confinement" in violation of Article 13, UCMJ, 10 U.S.C. § 813, and R.C.M. 305. The Government opposed the motion to dismiss. The Government contended there was no speedy trial violation, and that the findings of guilty as to the remaining charge and specification had been affirmed by this court and the purpose of the rehearing was sentencing only. However, the Government acknowledged Appellant had been erroneously, though not maliciously, kept in a pretrial confinement status at Miramar without appropriate process. The Government

---

[4] U.S. CONST. amend. V.

contended the appropriate remedy was "day-for-day confinement credit under R.C.M. 305(k)" from 20 July 2022, when the GCMCA received the record of trial and opinion of this court, until 1 November 2022, when the Prosecution belatedly realized Appellant was still in confinement and "moved as quickly as possible to obtain [his] release."

The military judge issued an oral ruling on the defense motion to dismiss, which he later supplemented in writing after the court-martial. The military judge found Appellant was not entitled to relief for violation of his speedy trial rights. With respect to the R.C.M. 707 requirement that Appellant be brought to trial within 120 days, the military judge found this period began to run on 20 July 2022 when the GCMCA received the record of trial and the opinion of this court authorizing a rehearing. The military judge further found the period between 15 November 2022 and 21 November 2022 was excludable delay. Therefore, the military judge found "it took the [G]overnment 119 days to bring [Appellant] to the first session of the rehearing," and there was no R.C.M. 707 violation. With respect to the alleged Article 10, UCMJ, violation, the military judge applied the four-factor test from *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether the Government met the "reasonable diligence standard." *See United States v. Reyes*, 80 M.J. 218, 226 (C.A.A.F. 2020). The military judge weighted most heavily his finding Appellant suffered no "actual prejudice" from the delay, and also considered that Appellant's Article 120, UCMJ, conviction already had been affirmed on appeal, in concluding Appellant's Article 10, UCMJ, and constitutional speedy trial rights were not violated.

With respect to unlawful pretrial confinement, the military judge found Appellant "spent 121 days in a pretrial confinement status in violation of R.C.M. 305's requirements." He awarded Appellant two days of confinement credit for each day of illegal pretrial confinement, or 242 days total. However, he found the Defense had not met its burden to demonstrate Appellant was entitled to additional sentence credit for illegal pretrial punishment in violation of Article 13, UCMJ.

The military judge imposed a dishonorable discharge, confinement for 46 months, reduction to the grade of E-1, and forfeiture of all pay and allowances. Appellant received 1,055 days of confinement credit based on confinement Appellant served pursuant to his original sentence; 121 days of pretrial confinement credit; and 242 days of judicially ordered credit for illegal pretrial confinement. Because the total credit exceeded Appellant's term of confinement, the military judge directed "182 days of credit against the portion of the adjudged sentence to total forfeiture of all pay and allowances."

## II. DISCUSSION

### A. Credit for Unlawful Pretrial Confinement

#### 1. Law

##### *a. Article 13, UCMJ*

Article 13, UCMJ, provides in part: "No person, while being held for trial, may be subjected to punishment or penalty other than arrest or confinement upon the charges pending against him, nor shall the arrest or confinement imposed upon him be any more rigorous than the circumstances require to insure his presence . . . ." The CAAF has "interpreted Article 13[, UCMJ,] to prohibit two types of activities: (1) the intentional imposition of punishment on an accused prior to trial, i.e., illegal pretrial punishment; and (2) pretrial confinement conditions that are more rigorous than necessary to ensure the accused's presence at trial, i.e., illegal pretrial confinement." *United States v. Fischer*, 61 M.J. 415, 418 (C.A.A.F. 2005) (citations omitted). The CAAF has explained:

> [T]he question of whether particular conditions amount to punishment before trial is a matter of intent, which is determined by examining the purposes served by the restriction or condition, and whether such purposes are "reasonably related to a legitimate governmental objective."

> [I]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective.

*Howell v. United States*, 75 M.J. 386, 393 (C.A.A.F. 2016) (alterations in original) (quoting *United States v. Palmiter*, 20 M.J. 90, 95 (C.M.A. 1985)) (additional citation omitted); *see also United States v. Guardado*, 79 M.J. 301, 303 (C.A.A.F. 2020) (relying on *Howell*). "Conditions that are sufficiently egregious may give rise to a permissive inference that an accused is being punished, or the conditions may be so excessive as to constitute punishment." *United States v. King*, 61 M.J. 225, 227 (C.A.A.F. 2005) (citations omitted).

"The question whether appellant is entitled to credit for a violation of Article 13[, UCMJ,] is a mixed question of fact and law." *United States v. Mosby*, 56 M.J. 309, 310 (C.A.A.F. 2002) (citations omitted). "The burden is on [an] appellant to establish entitlement to additional sentence credit because of a violation of Article 13[, UCMJ]." *Id.* (citing R.C.M. 905(c)(2)); *see also Guardado*, 79 M.J. at 303 ("Appellant bears the burden of proof to establish a violation of Article 13, UCMJ." (citation omitted)). "We will not overturn a military judge's findings of fact, including a finding of no intent to punish, unless they are clearly erroneous. We will review de novo the ultimate question

whether an appellant is entitled to credit for a violation of Article 13[, UCMJ].” *Mosby*, 56 M.J. at 310 (citation omitted).

### b. Pretrial Confinement

R.C.M. 305(b) authorizes the pretrial confinement of “[a]ny person who is subject to trial by court-martial if the requirements of this rule are met.” R.C.M. 305 subsections (d) through (j) set forth a number of procedural requirements for initiating and continuing pretrial confinement. In general, an accused is entitled to day-for-day confinement credit against his or her sentence for every day spent in pretrial confinement pursuant to R.C.M. 305. *See United States v. Allen*, 17 M.J. 126, 128–29 (C.M.A. 1984). R.C.M. 305(k) addresses remedies for noncompliance with particular procedural requirements of the rule, specifically:

> an administrative credit against the sentence adjudged . . . . Such credit shall be computed at the rate of 1 day credit for each day of confinement served as a result of such noncompliance. The military judge may order additional credit for each day of pretrial confinement that involves an abuse of discretion or unusually harsh circumstances. This credit is to be applied in addition to any other credit the accused may be entitled as a result of pretrial confinement served.

We review a military judge’s decision whether to award credit under R.C.M. 305(k) for an abuse of discretion. *See United States v. Adcock*, 65 M.J. 18, 24 (C.A.A.F. 2007); *United States v. Rodriguez*, No. ACM 38519 (reh), 2019 CCA LEXIS 35, at *15 (A.F. Ct. Crim. App. 30 Jan. 2019) (unpub. op.) (citing *Adcock*, 65 M.J. at 24).

Decisions of the Courts of Criminal Appeals (CCAs) are not “self-executing.” *United States v. Miller*, 47 M.J. 352, 361 (C.A.A.F. 1997) (citations omitted). “The Judge Advocate General [TJAG] shall, unless there is to be further action by the President, the Secretary concerned, the [CAAF], or the [United States] Supreme Court, instruct the appropriate authority to take action in accordance with the decision of the [CCA].” 10 U.S.C. § 866(g). “If [TJAG] immediately decides not to pursue a case further, there must be immediate notice to the convening authority of the opinion of the [CCA] and immediate direction to release an accused or conduct a hearing under [R.C.M.] 305 . . . on pretrial confinement.” *Miller*, 47 M.J. at 361 (citation omitted). If TJAG does not make an immediate decision, there is a period during which the Government considers whether to seek reconsideration of the CCA opinion and TJAG considers whether to certify the case to the CAAF for review. *Id*. “During such period, an accused remains in confinement because the opinion below is inchoate.” *Id*. However, when a CCA has set aside the sentence and no further appellate

review is pending, once the record has been remanded to the convening authority the CCA's decision is no longer inchoate, and any further lawful confinement would be subject to R.C.M. 305. *See United States v. Mancini*, No. ACM 38783 (reh), 2018 CCA LEXIS 495, at *15 (A.F. Ct. Crim. App. 16 Oct. 2018) (unpub. op.).

### 2. Analysis

Appellant contends he is entitled to greater relief for illegal pretrial confinement than the 242 days of credit provided by the military judge. He makes two primary arguments. First, Appellant contends the military judge should have found his pretrial confinement began on 30 June 2022—30 days after this court issued its opinion in *Martinez II*—rather than 20 July 2022—when the convening authority received the record and decision of this court. Second, Appellant contends the military judge erred in finding Appellant was not illegally punished in violation of Article 13, UCMJ. We address each contention in turn.

#### a. Pretrial Confinement Start Date

Appellant cites *Miller*, which stated that if a CCA sets aside a sentence and TJAG does not immediately order the appellant's release, "there will be a 30-day period" during which the CCA opinion is inchoate while a possible motion for reconsideration or certification to the CAAF are pending. 47 M.J. at 361. In Appellant's case, these 30 days would have ended on 30 June 2022. However, as the Government observes, the CAAF's decision in *Miller* was based on the then-current version of the CAAF's rules, which required TJAG's certificate of review be filed not later than 30 days after the CCA decision. *Id.* Appellant concedes that prior to this court's decision in *Martinez II*, the CAAF's rules had since been changed to permit TJAG 60 days from the CCA's decision to certify a case for the CAAF's review. *See* C.A.A.F. R. 19(b)(3). Applying the reasoning of *Miller* to this change, this court's decision in *Martinez II* could have remained inchoate until 30 July 2022, when TJAG's opportunity to certify the case would expire. In the event, *Martinez II* ceased to be inchoate when the record was returned to the convening authority on 20 July 2022, the date the military judge correctly identified. Accordingly, we find no error in this respect.

#### b. Article 13, UCMJ

The military judge concluded the Defense "ha[d] not met its burden to persuade this court that any additional sentence credit is warranted for alleged violations of Article 13[, UCMJ]." *See Guardado*, 79 M.J. at 303. He explained "the evidence before the court d[id] not demonstrate" either that Appellant's "continued confinement from 20 July 2022 through 17 November 2022 was the result of an intent of detention officials or government representatives to punish [Appellant] prior to his rehearing," or that Appellant "was subject to unduly rigorous circumstances during this period of detention prior to the rehearing."

We conclude these factual determinations by the military judge are not clearly erroneous. The record supports a conclusion that Appellant's continued confinement at Miramar, although not in compliance with R.C.M. 305, was attributable to inertia and lack of awareness of Appellant's circumstances rather than an intent to subject Appellant to pretrial punishment. In addition, the record supports the military judge's conclusion Appellant failed to prove he was subjected to unusually harsh conditions at Miramar.

Appellant contends the military judge applied the wrong standard to the question of illegal pretrial punishment. He cites *Howell* for the principle that "[i]n the absence of a showing of intent to punish, a court must look to see if a particular restriction or condition, which may on its face appear to be punishment, is instead but an incident of a legitimate nonpunitive governmental objective." 75 M.J. at 393 (citations omitted). Appellant reasons his continued confinement "under the auspices" of his original sentence, without following the procedures required by R.C.M. 305 for pretrial confinement, served no legitimate government purpose and violated Article 13, UCMJ. In response, the Government contends, *inter alia*, that although it was negligent in failing to either release Appellant or initiate a confinement hearing pending the court-martial rehearing, "there was no illegal intent," and "[t]he military judge appropriately addressed the illegal confinement with two-for-one credit under R.C.M. 305."

We are not persuaded by Appellant's argument. The military judge found, and the parties agree, that Appellant's continued confinement at Miramar was illegal in the sense that it was not conducted in accordance with R.C.M. 305. However, the fact that confinement was imposed erroneously does not mean the confinement itself was necessarily without a "legitimate nonpunitive governmental objective." *Howell*, 75 M.J. at 393 (citations omitted). For comparison, in *Howell* itself, the CAAF found the Government misinterpreted Article 75(a), UCMJ, 10 U.S.C. § 875(a), when it paid the appellant at the E-1 rate rather than his original E-6 rate after the appellant's sentence had been set aside, pending a rehearing. *Howell*, 75 M.J. at 391. However, the fact that the Government acted erroneously (in the CAAF's view) did not mean the Government lacked a legitimate, nonpunitive governmental objective in attempting to pay the appellant at the correct rate, and the CAAF found no Article 13, UCMJ, violation. *Id.* at 394.

In the instant case, the Government had a legitimate, nonpunitive governmental objective in ensuring Appellant would be present for his rehearing. Appellant already had an affirmed conviction for a serious sexual offense. Until the convening authority dismissed the Article 80, UCMJ, attempted sexual assault charge on 2 November 2022, Appellant also faced possible re-prosecution for that offense. As discussed above, the military judge recognized the

Government failed to properly serve that legitimate objective by failing to comply with R.C.M. 305, and the military judge provided appropriate relief. We conclude the military judge did not abuse his discretion when he found Appellant was not entitled to Article 13, UCMJ, relief in the absence of either an intent to impose pretrial punishment on Appellant or unusually harsh conditions of confinement.

## B. Speedy Trial

### 1. Law

#### a. R.C.M. 707

In general, "[t]he accused shall be brought to trial within 120 days after the earlier of: [p]referral of charges; [t]he imposition of restraint . . .; or [e]ntry on active duty under R.C.M. 204." R.C.M. 707(a). However,

> [i]f a rehearing is ordered or authorized by an appellate court, a new 120-day time period under this rule shall begin on the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing. An accused is brought to trial within the meaning of this rule at the time of arraignment under R.C.M. 904 or, if arraignment is not required . . . at the time of the first session under R.C.M. 803.

R.C.M. 707(b)(3)(D) (emphasis added).

"All . . . pretrial delays approved by a military judge or the convening authority shall be . . . excluded" for purposes of "determining whether the [120-day] period . . . has run." R.C.M. 707(c); *see also United States v. Guyton*, 82 M.J. 146, 151 (C.A.A.F. 2022) (quoting R.C.M. 707(c)). R.C.M. 707 does not prohibit after-the-fact approval of delays nor ex parte requests for excludable delay. *Guyton*, 82 M.J. at 151 (quoting *United States v. Thompson*, 46 M.J. 472, 475 (C.A.A.F. 1997)); *United States v. Heppermann*, 82 M.J. 794, 803 (A.F. Ct. Crim. App. 2022).

We review alleged R.C.M. 707 violations de novo. *Guyton*, 82 M.J. at 151 (citations omitted); *Heppermann*, 82 M.J. at 803 (citation omitted). However, "[w]e give substantial deference to findings of fact made by the military judge and will not overturn such findings unless they are clearly erroneous." *United States v. Fujiwara*, 64 M.J. 695, 697 (A.F. Ct. Crim. App. 2007) (citations omitted). We review a decision to approve a delay and exclude time from the 120-day period pursuant to R.C.M. 707(c) for an abuse of discretion. *See United States v. Lazauskas*, 62 M.J. 39, 41–42 (C.A.A.F. 2005). "Abuse of discretion occurs when the military judge: (1) bases a ruling on findings of fact that are not supported by the evidence; (2) uses incorrect legal principles; (3) applies correct legal principles in a clearly unreasonable way; or (4) does not consider

important facts." *United States v. Ramirez*, 84 M.J. 173, 176 (C.A.A.F. 2024) (citing *United States v. Commisso*, 76 M.J. 315, 321 (C.A.A.F. 2017)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997); *United States v. Travers*, 25 M.J. 61, 62 (C.M.A. 1987)).

"A failure to comply with [R.C.M. 707] will result in dismissal of the affected charges, or, in the case of a sentence-only rehearing, sentence relief as appropriate." R.C.M. 707(d)(2); *see also United States v. Becker*, 53 M.J. 229, 232 (C.A.A.F. 2000) (explaining that in the case of a sentence-only rehearing, dismissal of charges is not an appropriate remedy for an R.C.M. 707 violation).

### b. Article 10, UCMJ

Article 10(b), UCMJ, provides in pertinent part: "When a person subject to this chapter is placed in arrest or confinement prior to trial, immediate steps shall be taken [ ] to inform the person of the specific offense of which the person is accused[ ] and [ ] to try the person or to dismiss the charges and release the person." 10 U.S.C. § 810(b). "[T]he factors from *Barker v. Wingo*[, 407 U.S. 514 (1972),] are an apt structure for examining the facts and circumstances surrounding an alleged Article 10[, UCMJ,] violation." *United States v. Mizgala*, 61 M.J. 122, 127 (C.A.A.F. 2005) (citations omitted). Accordingly, "our framework to determine whether the Government proceeded with reasonable diligence includes balancing the following four factors: (1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *Id.* at 129 (citing *Barker*, 407 U.S. at 530) (additional citation omitted). In this context, the "three recognized interests of prejudice are (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." *Cooley*, 75 M.J. at 262 (citing *Mizgala*, 61 M.J. at 129). However, these factors are not "talismanic" and "must be considered together with such other circumstances as may be relevant." *United States v. Wilson*, 72 M.J. 347, 351 (C.A.A.F. 2013) (quoting *Barker*, 407 U.S. at 533).

"Article 10, UCMJ, does not demand constant motion but does impose on the Government the standard of 'reasonable diligence in bringing the charges to trial.'" *Cooley*, 75 M.J. at 259 (quoting *Mizgala*, 61 M.J. at 127, 129). "Short periods of inactivity are not fatal to an otherwise active prosecution." *Mizgala*, 61 M.J. at 127 (quoting *United States v. Tibbs*, 35 C.M.R. 322, 325 (C.M.A. 1965)). We evaluate "the proceeding as a whole and not mere speed." *Id.* at 129 (citation omitted).

We review de novo whether an appellant was denied the right to speedy trial under Article 10, UCMJ. *Cooley*, 75 M.J. at 259 (citation omitted). We are bound by the military judge's findings of fact unless they are clearly erroneous. *Id.* (citation omitted). "A finding of fact is clearly erroneous when 'there is no evidence to support the finding' or when 'although there is evidence to support it, the reviewing court on the evidence is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Harrington*, 81 M.J. 184, 189 (C.A.A.F. 2021) (quoting *United States v. Criswell*, 78 M.J. 136, 141 (C.A.A.F. 2018)).

In general, "[t]he remedy for an Article 10[, UCMJ,] violation [is] dismissal with prejudice of the affected charges." *United States v. Kossman*, 38 M.J. 258, 262 (C.M.A. 1993). However, "dismissal of the charges with or without prejudice . . . is not appropriate in the case of an accused whose guilt has already been determined, and affirmed on appeal, and where the only remaining determination is the sentence." *Becker*, 53 M.J. at 232. The CAAF has explained that in such cases, a servicemember's Article 10, UCMJ, rights may be protected by tailoring the remedy to the harm suffered, "such as an appropriate sentence credit or, in a case where the delay has interfered with the defense's ability to receive a fair hearing, a sentence to no punishment at all." *Id.*

### 2. Analysis

Appellant contends the Government violated both his R.C.M. 707 and Article 10, UCMJ, speedy trial rights. We address each contention in turn.

#### a. R.C.M. 707

First, Appellant contends the military judge miscalculated the length of the pretrial delay from 20 July 2022, rather than 30 June 2022. Reiterating his argument from issue (1), *supra*, Appellant contends this court's opinion in *Martinez II* setting aside the Article 80, UCMJ, conviction and the sentence ceased to be inchoate on 30 June 2022, at which point the R.C.M. 707 "clock began to run." However, R.C.M. 707(b)(3)(D) provides that in the case of a rehearing, "a new 120-day time period under this rule shall begin on the date that the responsible convening authority receives the record of trial and the opinion authorizing or directing a rehearing." The military judge found the convening authority received the record and opinion on 20 July 2022, a finding which is not clearly erroneous. Accordingly, we find no error in this respect.

Next, Appellant contends the military judge erred by excluding the delay from 17 November 2022—the Defense's stated ready date—until 21 November 2022—when Appellant's sentencing rehearing began. Appellant argues "[a]ny delay incurred after the defense ready date could not be counted against [Appellant], even if the [D]efense benefited from it in some way." Therefore, Appellant argues, even if the military judge did not err by beginning to count the

120 days from 20 July 2022, the length of the delay attributable to the Government should have been 122 days, rather than 119 days.

We do not find the military judge abused his discretion in excluding the delay from 17 November 2022 until 21 November 2022. In reaching his conclusion, the military judge explained the record indicated the Defense had previously repeatedly agreed to the exclusion of time between 21 October 2022 and the scheduled rehearing date. On 15 November 2022, the Government submitted a revised docketing request to the trial court "indicating both parties request the rehearing be set for 21 November 2022." On the same day, at the parties' request, the military judge set the rehearing for 21 November 2022. Also on 15 November 2022, trial defense counsel "represent[ed] to the [G]overnment that due to the date of service, the [D]efense [now] only agree[d] . . . on the exclusion of time from the speedy trial calculation from 15 November 2022 until the [D]efense's stated ready date of 17 November 2022." However, despite having "the opportunity to request a docketing conference and press for the rehearing to begin on its stated ready date," the Defense "agreed with the [G]overnment on setting the rehearing to begin on 21 November 2022," and the date was set in reliance on that agreement. Under these circumstances, we find the military judge's exclusion of time was not arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *See McElhaney*, 54 M.J. at 130. Accordingly, Appellant is not entitled to relief under R.C.M. 707.

### b. Article 10, UCMJ

Appellant contends the military judge erred by concluding the Government did not violate Appellant's Article 10, UCMJ, right to a speedy court-martial. We find Appellant is not entitled to relief.

### i. The Military Judge's Ruling

As stated in Section I, *supra*, the military judge evaluated the Defense's allegation of an Article 10, UCMJ, violation by applying the four-factor *Barker* test. *See Mizgala*, 61 M.J. at 127. The military judge found the first three factors weighed in favor of the Defense. He found the length of the delay was facially unreasonable, and in particular that the Government's "blatant failure" to comply with R.C.M. 305 pretrial confinement procedures "significantly outweigh[ed]" considerations favoring the Government, such as the seriousness of the offenses and the Prosecution's need to determine "the availability of proof" for the Article 80, UCMJ, attempted sexual assault charge.

As to the reasons for delay, the military judge found the Government had not acted with the intent to hamper the Defense, and some periods of delay appeared "legitimate," such as the need to determine whether the alleged victim of the Article 80, UCMJ, offense was willing to participate in a rehearing. However, the military judge found other periods of delay, such as that from 20

July 2022 until 9 September 2022, when the VWAP coordinator began contacting the victim's counsel, were "largely unexplained by the [G]overnment." Moreover, the military judge found "no legitimate reason" why the Government should have been unaware Appellant remained confined at Miramar. On the whole, the military judge "weigh[ed] this factor against the [G]overnment, but does not weigh it as heavily as it would had the [G]overnment's delay [been] an attempt to hamper [Appellant's] defense."

The military judge noted the Defense did demand speedy trial on 1 November 2022. However, he found several circumstances undermined how much this factor weighed in the Defense's favor. For example, at the time of the demand, trial defense counsel had indicated she was not available until 30 November 2022, and the Defense later agreed with the Government on a 21 November 2022 start date. Ultimately, the military judge found "this factor weighs very slightly against the [G]overnment."

However, the military judge further found that Appellant suffered no actual prejudice from the delay to the three "recognized interests" identified in *Barker*, 407 U.S. at 532. With regard to prejudice, the military judge explained:

> The court concludes the evidence before the court demonstrates no actual prejudice to [Appellant]. While the court recognizes [Appellant] should have been released from confinement immediately after 20 July 2022 or ordered into pretrial confinement if deemed appropriate, the evidence before the court does not indicate the accused suffered oppressive conditions while held in pretrial confinement. The record also does not demonstrate any particularized anxiety and concern outside of the normal anxiety associated with the appellate process. Finally, and most importantly, the evidence in the record does not demonstrate that [Appellant's] ability to prepare and defend himself at this sentence-only rehearing w[as] impaired. The court recognizes that [Appellant] experienced difficulties with making phone calls anytime he wanted, but the record does not demonstrate that [Appellant's] defense has been affected in any[ ]way by these logistical hurdles.

Because the military judge found the absence of prejudice outweighed the other factors, he "found no violation of [Appellant's] Article 10[, UCMJ,] right to a speedy trial," nor a violation of any constitutional right to speedy trial.

Appellant argues the military judge erred in finding no prejudice, and that in fact Appellant was prejudiced with respect to all three recognized interests. We address each argument in turn.

### ii. Oppressive Pretrial Incarceration

With respect to oppressive pretrial incarceration, Appellant contends he was "illegally confined" and "treated the same as inmates that were sentenced," a violation of his "due process rights" that was "inherently prejudicial." However, Appellant does not identify any specific condition that rendered his confinement "oppressive." We agree Appellant's continued confinement was "illegal" in the sense that it was not implemented in accordance with R.C.M. 305, and the military judge reasonably recognized this failing as an R.C.M. 305 violation and awarded relief accordingly on that basis, as described *supra* with respect to issue (1). However, we are not persuaded that pretrial confinement without the procedures required by R.C.M. 305 is inevitably "oppressive" for purposes of an Article 10, UCMJ, *Barker* analysis.

We recognize that that the total amount of confinement credit the military judge awarded Appellant for confinement served (1,418 days) exceeded the amount of confinement the military judge imposed in the rehearing sentence (46 months).[5] In other words, had the Government not unreasonably delayed the rehearing, Appellant might have spent less time confined at Miramar. Although not an argument specifically advanced by Appellant, one might argue that Appellant's pretrial confinement was therefore oppressive due to its duration, if not due to specific conditions of confinement. Surely Appellant had a significant interest in his physical freedom, and in *Barker* itself the Supreme Court spoke not only of the "societal disadvantages" but the "detrimental impact on the individual" of lengthy pretrial incarceration. 407 U.S. at 532.

However, we cannot say the military judge's finding of no oppressive pretrial incarceration was clearly erroneous in this respect. *See Cooley*, 75 M.J. at 259. First, the CAAF has clearly implied that pretrial confinement that exceeds the adjudged sentence is not necessarily prejudicial in terms of a *Barker* analysis. *United States v. Danylo*, 73 M.J. 183, 188 (C.A.A.F. 2014) ("[W]e have never held that pretrial confinement which exceeds an adjudged sentence is per se prejudicial." (citation omitted)). In addition, at the time the military judge made his oral ruling, Appellant's sentence was yet to be determined and the adjudged term of confinement might potentially have exceeded the amount of confinement credit. Moreover, the excess confinement credit could be, and ultimately was, used to offset other elements of the sentence—specifically adjudged forfeitures. Under these circumstances we do not find clear error.

### iii. Anxiety and Concern

Appellant contends he "faced particularized anxiety that was unique from that typically experienced by pretrial detainees because he was illegally

---

[5] As stated *supra*, the military judge applied excess confinement credit against Appellant's adjudged total forfeiture of pay and allowances.

confined without an adjudicated sentence." We note that the military judge's written findings of fact included that "[f]rom the time [Appellant] was initially informed about the original [ ] opinion [of this court] until his release from confinement, [Appellant] was confused, anxious, and despondent. He was also upset with the Government for forgetting about him." Nevertheless, the military judge concluded "[t]he record . . . does not demonstrate any particularized anxiety and concern outside of the normal anxiety associated with the appellate process." Another judge might have reasonably disagreed with this conclusion as to what constitutes "normal anxiety." Nevertheless, given the deference we afford the military judge's determinations regarding the existence of anxiety and concern, we do not hold the military judge's conclusion was clearly erroneous. *See Cooley*, 75 M.J. at 259 (citation omitted).

### iv. Impairment of the Defense

As to impairment of the defense, Appellant cites "a series of technical failures and staffing issues" at Miramar, as described in Appellant's declaration to the trial court, which "prevented him from being able to work on his case." However, on appeal as at trial, Appellant does not identify any specific adverse impact these logistical difficulties had on the Defense at the rehearing. The record supports the military judge's conclusion that Appellant's ability to prepare and defend himself at the rehearing was not materially impaired.

### v. Conclusion as to Article 10, UCMJ

Accordingly, we do not find the military judge's findings with respect to the prejudice prong of his *Barker* analysis were clearly erroneous. In addition, we do not find the military judge erred in holding the absence of prejudice outweighed the first three *Barker* factors which, on balance, did not heavily favor the Defense. Viewing the circumstances as a whole, although the Government's processing of this case was "not stellar," *Mizgala*, 61 M.J. at 129, in the absence of prejudice we do not find the military judge erred in concluding there was no Article 10, UCMJ, violation. *Cf. United States v. Laubach*, No. ACM 39396, 2019 CCA LEXIS 245, at *30 (A.F. Ct. Crim. App. 7 Jun. 2019) (unpub. op.) ("We note Appellant has failed to identify any decision by the CAAF or by this court finding a violation of Article 10, UCMJ, in the absence of some finding of prejudice to the accused.").

**C. Post-Trial Delay**

   **1. Additional Background**[6]

      ***a. Pre-Docketing Delay***

Appellant's rehearing concluded on 22 November 2022. On 22 December 2022, trial defense counsel submitted Appellant's post-trial matters to the convening authority prior to the convening authority's decision on action. Trial defense counsel requested the convening authority not approve the adjudged total forfeiture of pay and allowances. In part, trial defense counsel contended this relief was warranted because Appellant had accrued 164 days of "good conduct time" while serving his original sentence to confinement from the 2019 court-martial which, when added to confinement credit awarded by the military judge at the rehearing, resulted in 295 days of confinement credit in excess of the 46 months of confinement adjudged at the rehearing. On 23 January 2023, the convening authority approved the adjudged sentence in its entirety.

The court reporter certified the transcript on 30 January 2023. On 22 February 2023, the military judge contacted trial counsel and trial defense counsel by email, identifying an issue relating to the convening authority's action and soliciting their views on whether the Defense had waived its opportunity to challenge the convening authority's decision. After further communication, on 2 March 2023 the Defense submitted a post-trial motion requesting the military judge "correct" the confinement sentence credit in light of Appellant's earned good conduct time from his original sentence to confinement. The Government opposed the motion on 8 March 2023, and the Defense submitted a reply brief on 21 March 2023. The military judge issued a written ruling on the motion on 8 May 2023, concluding Appellant was entitled to good time credit and ultimately awarding "a total of 182 days credited against the portion of the adjudged sentence to total forfeiture of all pay and allowances."

The military judge then signed a first corrected copy of the Statement of Trial Results (STR) on 12 May 2023, and then a second corrected copy of the STR on 18 May 2023, before signing the entry of judgment on 31 May 2023. The court reporter certified the record on 1 June 2023. On 23 June 2023, the convening authority indicated he would not modify his decision on action in light of "the new post-trial documents." However, copies of the record were not delivered to Appellant and trial defense counsel until 18 and 21 September

---

[6] The following information is drawn from the record as well as from declarations and chronologies from the Fairchild AFB Deputy SJA, which the Government moved this court to attach to the record. We conclude we may consider the declaration and chronology in order to "resolv[e] issues raised by materials in the record." *United States v. Jessie*, 79 M.J. 437, 444 (C.A.A.F. 2020).

2023, respectively. The record was docketed with this court on 12 October 2023, 324 days after sentencing.

### b. Post-Docketing Delay

After docketing, Appellant requested and was granted ten enlargements of time before he filed his assignments of error on 21 October 2024. The Government filed its answer brief on 14 November 2024. On the same date, the Government moved to attach several documents to the record, including, *inter alia*, four appellate exhibits it had "discovered" were "missing" from the record. Specifically, these missing exhibits consisted of the Defense's post-trial motion, the Government's opposition, the Defense's reply, and the military judge's ruling from March and May 2023 described above. On 26 November 2024, this court ordered the Government to show good cause as to why the court should not return the record for correction with respect to the missing exhibits. On 9 December 2024, the Government responded that remand was unnecessary.[7] Nevertheless, on 16 December 2024 this court remanded the record for correction pursuant to R.C.M. 1112(d) to account for the missing exhibits, "and any other portion of the record that is determined to be missing or defective hereafter."

On 6 January 2025, the military judge signed a certificate of correction inserting the four previously identified documents in the record as appellate exhibits, as well as an additional appellate exhibit consisting of certain email traffic between the military judge and parties. The record was re-docketed with this court on 5 February 2025. Appellant requested and was granted another enlargement of time before submitting an additional brief on 6 June 2025. The Government filed its answer on 14 July 2025.

### 2. Law

"[C]onvicted servicemembers have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). In *Moreno*, the CAAF established a presumption of facially unreasonable delay "where the action of the convening authority is not taken within 120 days of the completion of trial," "where the record of trial is not docketed by the [CCA] within thirty days of the convening authority's action," or "where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the [CCA]." 63 M.J. at 142. In *United States v. Livak*, this court adapted the Moreno standard for cases referred to trial on or after 1 January 2019 and established an

---

[7] In the meantime, Appellant submitted his reply to the Government's answer on 2 December 2024.

aggregated 150-day standard for facially unreasonable delay from sentencing to docketing with the CCA. 80 M.J. 631, 633 (A.F. Ct. Crim. App. 2020).

Where there is a facially unreasonable delay, we examine the four factors set forth in *Barker*, 407 U.S. at 530: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice [to the appellant]." *Moreno*, 63 M.J. at 135 (citations omitted). The CAAF identified three types of cognizable prejudice for purposes of the right to timely post-trial review: (1) oppressive incarceration; (2) "particularized" anxiety and concern "that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision;" and (3) impairment of the appellant's grounds for appeal or ability to present a defense at a rehearing. *Id*. at 138–40 (citations omitted). Where there is no qualifying prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

Independent of an appellant's due process rights, the Courts of Criminal Appeals have authority to "provide appropriate relief if [an appellant] demonstrates error or excessive delay in the processing of the court-martial after the judgment was entered . . . ." 10 U.S.C. § 866(d)(2); *see United States v. Valentin-Andino*, 85 M.J. 361 (C.A.A.F. 2025).

We review de novo an appellant's entitlement to relief for post-trial delay. *Livak*, 80 M.J. at 633 (citing *Moreno*, 63 M.J. at 135).

**3. Analysis**

Appellant contends he is entitled to relief due to unreasonable post-trial delay at both the pre-docketing and post-docketing stages. We consider each stage in turn.

### a. Due Process: Pre-Docketing Delay

The 324 days that elapsed from Appellant's sentencing to the initial docketing by this court exceeded the 150-day *Livak* standard by 174 days and was facially unreasonable. One notable period of delay was from 22 February 2023, when the military judge identified to the parties an issue with Appellant's clemency request and the convening authority's action, to 8 May 2023, when the military judge ruled on the Defense's post-trial motion. We find this period of delay weighs little against the Government because it was evidently prompted and controlled by the military judge. However, a second notable period of delay, from the certification of the record on 1 June 2023 until Appellant and trial defense counsel were served with copies of the record on 18 and 21 September 2023, finds little explanation in the record and is attributable to the Government. The chronology supplied by the Government implies gaps in

leadership positions at the base legal office may have played some role, but this is neither specifically stated nor a sufficient explanation. However, the record provides no indication, and Appellant makes no claim, that he asserted his right to speedy processing and review prior to filing his assignments of error with this court.

Importantly, Appellant fails to demonstrate he was prejudiced by the delay. He asserts he suffered impairment to his grounds for appeal because he "was unable to petition this [c]ourt for relief sooner." However, he fails to explain how his appeal might have been more successful or beneficial had it been filed earlier. Moreover, we note this court has not found in Appellant's favor with respect to his other assignments of error. Appellant also asserts he "suffered severe mental hardship," citing a declaration he has provided to this court.[8] However, the declaration primarily addresses Appellant's time in confinement, which ended before the post-trial phase of his rehearing began. To the extent Appellant expresses that during the post-trial and appellate process he felt "overwhelmed," "treated unfairly by the process throughout the legal proceedings," and "unable to move on," we are not persuaded Appellant experienced anxiety and concern materially "distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Moreno*, 63 M.J. at 139.

The post-trial processing of Appellant's court-martial left much to be desired. However, in the absence of cognizable prejudice, we do not find the delay from sentencing to docketing was so egregious as to impugn "the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362. We therefore find no due process violation.

### b. Due Process: Post-Docketing Delay

More than 18 months have elapsed since Appellant's record was docketed with this court on 12 October 2023; thus, there is a facially unreasonable delay under *Moreno*. We note this court is issuing its opinion approximately four months after receiving the Government's final brief. The delay exceeds the *Moreno* standard by approximately seven months and is largely attributable to two notable factors. First, Appellant requested a total of 11 enlargements of time in which to file his assignments of error with this court—ten enlargements for the original brief, and one enlargement for the post-remand additional brief. Second, the record was remanded from 16 December 2024 until 6 February 2025 for correction due to several missing appellate exhibits, as described above. This latter delay is attributable to the Government, but accounts for a significantly shorter period of time than Appellant's motions for

---

[8] We conclude we may consider Appellant's declaration in order to "resolv[e] issues raised by materials in the record." *Jessie*, 79 M.J. at 444.

enlargements of time. As noted above, Appellant did not demand speedy post-trial and appellate review until he filed his assignments of error on 21 October 2024.

With respect to prejudice due to delay during the post-docketing phase, Appellant does not significantly elaborate on the arguments addressed above with respect to the pre-docketing phase, which we found unpersuasive. However, in light of the need to remand the record to insert the missing exhibits, Appellant contends this court should grant him relief to address the Government's "institutional neglect and gross indifference" toward post-trial processing. Specifically, Appellant requests this court set aside his reduction in rank and reduce his term of confinement. In response, the Government denies that its processing during the remand was unreasonable or that there was institutional harm or neglect in the handling of Appellant's case.

Viewing the post-docketing phase as a whole, in the absence of prejudice to Appellant, and having carefully considered the reasons for delay, we do not find the delay so egregious as to adversely affect public perception of the fairness and integrity of the military justice system. *See Toohey*, 63 M.J. at 362. We again find no due process violation.

### c. Article 66(d)(2), UCMJ, Relief

We have also considered whether to grant "appropriate relief" for "excessive delay" pursuant to Article 66(d), UCMJ, 10 U.S.C. § 866(d)(2), independent of any due process violation. Having considered the post-trial processing of Appellant's rehearing as a whole, and particularly the baffling delay between the court reporter's certification of the record on 1 June 2023 and delivery of the record to Appellant on 18 September 2023, we find it appropriate to partially disapprove the adjudged reduction in grade.

### III. CONCLUSION

The findings of guilty were previously affirmed. We affirm only so much of the sentence as entered as provides for a dishonorable discharge, confinement for 46 months, total forfeiture of pay and allowances, and reduction to the grade of E-2. The sentence, as modified, is correct in law and fact, and no additional error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d).

Accordingly, the sentence, as modified, is **AFFIRMED**.



FOR THE COURT

CAROL K. JOYCE
Clerk of the Court